1
2
3
4
5                    **UNITED STATES DISTRICT COURT**

6                         **DISTRICT OF NEVADA**

7

8    UNITED STATES OF AMERICA            )
                                          )
9                    Plaintiffs,          )        Case No.: 2:13-cv-100-JCM-GWF
                                          )
10   vs.                                  )        **ORDER**
                                          )
11   $177,844.68 in UNITED STATES CURRENCY, )      **Motion to Stay (#29)**
                                          )
12   and                                  )
                                          )
13   $296,746.66 in UNITED STATES CURRENCY, )
                                          )
14                    Defendants.         )
     _____ )

15

16          This matter is before the Court on the Plaintiff's (the "Government") Motion to Stay

17   Discovery Pursuant to 18 U.S.C. § 981(g) (#29), filed on June 5, 2014.  The Government's motion

18   was initially filed under seal and was not served on the Claimants.  The Court ordered the

19   Government to file and serve a redacted version of the motion to stay on the Claimants, which it

20   did. *See Orders (#33* and *#35)*.  Claimants Charles Burton Ritchie, Stephanie Ritchie and ZIW,

21   LLC filed their Response in Opposition to the Motion to Stay (#39) on July 14, 2014 and a Notice

22   of Supplemental Authority (#40) on July 23, 2014.  The Government filed its Reply (#29) on July

23   24, 2014. The Claimants also filed a Motion to Compel Production of Documents (#31) on June

24   24, 2014.  On July 8, 2014, the Court temporarily stayed discovery pending its ruling on

25   Government's Motion to Stay Discovery (#29), which could potentially moot Claimants' motion to

26   compel.

27          The Court conducted a hearing in this matter on July 28, 2014.  During the hearing, the

28   Claimants requested permission to introduce various documentary exhibits which had not been

attached to their response to the Government's motion for stay.  The Court declined to admit the exhibits during the hearing, and instead granted the Government additional time to review the proposed exhibits and notify the Court and Claimants of its objections to the exhibits, if any.  The Government filed its Response to the Claimant's Exhibits (#44) on August 1, 2014.  Claimants filed their Response to the Government's Objection to Claimants' Exhibits (#45) on August 4, 2014.

## **BACKGROUND**

The Government filed its Verified Complaint for Forfeiture *In Rem* (#1) on January 18, 2013.  The same day, it filed an Ex Parte Motion for an Order to Seal and Stay the Civil Action (#2) pending the completion of an ongoing criminal investigation related to the civil forfeiture action.  The Court granted the Government's ex parte motion to seal and stay the action on January 24, 2013.  *Order (#4)*.  This action remained sealed and stayed until January 23, 2014, when the Court granted the Government's Motion to Unseal and Lift Stay (#8, #9).  In its motion, the Government stated that "[w]ithout waiving, or commenting further, on the viability of a criminal case against any or all of the principals in this civil forfeiture action, the United States represents that it has no further objection to unsealing this case; nor does it object to the stay being lifted and case moving forward."  *Motion (#8), pgs. 1-2*.  The Government thereafter served the complaint by publication.  On March 11, 2014, Claimants Burton Ritchie, ZIW, LLC, Stephanie Ritchie and Benjamin E. Galecki filed their verified statements of claim.  The Claimants filed their answers to the complaint on March 31, 2014.

The Government alleges that on July 31, 2012, it seized $177,844.68 from a bank account in the Gulf Coast Community Bank in Pensacola, Florida in the name of ZIW, LLC and $296,746.66 from a bank account in the same bank in name of Charles Burton Ritchie.  *Complaint (#1)*, ¶ 5.  The Government alleges that the seized funds were derived from the manufacture and distribution of controlled substance analogues as defined in 21 U.S.C. § 802(32)(A).  ¶¶ 10-30.[1]

---

[1] 21 U.S.C. § 813 provides that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I [of the Controlled Substances Act.]"

1   According to the complaint, Charles Burton Ritchie, ZIW, LLC and Benjamin Galecki engaged in

2   the manufacture of a controlled substance analogue, commonly referred to as "Spice," which "is

3   manufactured from a variation of chemicals that are similar to other active ingredients in THC, the

4   active ingredient in marijuana, and provides the same psychoactive effect, i.e., it enables the user to

5   'get high.'" ¶ 11.  The Government further alleges that "[t]he manner in which Ritchie and Galecki

6   sold their products indicates that the products were being offered as controlled substances rather

7   than innocuous household products designed to improve the living space, as would be the central

8   purpose of incense, aromatherapy and similar products.  For example, the product labeling and

9   internet promotions restricted sale of the substances to customers who are 18 and older.  There

10  would be no need for an age restriction on the sale and/or use of the product if it were being offered

11  as an incense or aromatherapy." ¶ 17.  Although the products were labeled with the statement that

12  they are not for human consumption, the Government alleges that this was misleading because the

13  presence of analogue controlled substance ingredients as well as the pricing of the products

14  established that they were intended for sale and use as illicit recreational drugs. ¶ 18.

15      The Government alleges that during a July 25, 2012 search of ZIW, LLC's business

16  premises in Las Vegas, Nevada, federal law enforcement agents seized finished "Spice" products as

17  well as substances, equipment and packing materials used to manufacture and distribute "Spice." ¶

18  19.  The final products and a white powdery substance seized during the search tested positive for

19  the presence of 1-(5-Fluoropentyl)-3-(2,2,2,3-tetramethylcyclopropoyl, commonly known as UR-

20  144 which is an analogue of JWH-18, a Schedule I controlled substance.  ¶ 21.  The Government

21  further alleges that on July 26, 2012, a DEA agent visited a smoke shop in Pensacola, Florida

22  operated by Charles Burton Ritchie in which the agent observed suspected Spice products on

23  display for sale.  The agent interviewed Ritchie who stated that all of the products he sold through

24  ZIW and the smoke shop were tested to assure that they did not contain controlled substances.  ¶

25  23.  In a subsequent telephone interview, Ritchie again denied that ZIW products were controlled

26  substances and stated that they were tested by an independent private lab to assure that they were in

27  compliance with federal drug laws.  ¶ 24.

28  . . .

The Government alleges, however, that "Ritchie's claim that ZIW products are tested to assure compliance with federal law is disingenuous.  At least one of the laboratories that tests ZIW products provides two reports identifying the constituent ingredients in the tested product.  One report provides incomplete data of what ingredients are absent from the sample.  A second report lists all substances, including banned substances.  Ritchie's representations that ZIW products are in compliance with federal law, is based upon the first report which is incomplete in its analysis; and is, therefore, inaccurate in the conclusions it draws regarding the legitimacy of such substances."  ¶26.

The Government's Motion to Stay Discovery (#29) was apparently prompted by the Claimants' service of broad ranging requests for production of documents and interrogatories in April 2014.  Claimants' requests for production include the following:

**Request No. 1:**  All documents relating to any investigation or inquiry conducted by any state or federal agency [from January 1, 2012 through the present] which in any way relate to Burton Ritchie's and Benjamin Galecki's alleged involvement with the importation, manufacture, sale and distribution of analogue controlled substances Plaintiff alleges have been declared to be contraband Schedule I or Schedule II controlled substances pursuant to Title 21 U.S.C. § 802(32)(A).

**Request No. 4:** Any and all documents suggesting or describing Claimant's alleged involvement with narcotics or any illegal activity.

**Request No. 6:** All documents and evidence relied upon or generated by, or written or reviewed by government agents in the investigation that led to the seizure of the property in this case, and any other cases or investigations related to the instant case.

**Request No. 8:** All applications for and applications, and affidavits submitted in support of requests for search and/or seizure warrants, pen registers, trap and trace devices and any other electronic surveillance equipment related to the seizure of property in this case, and any other cases or investigations related to the instant case.

Claimant's interrogatories to the Government also include the following:

**Interrogatory 5:** State the name, address and telephone number of each person, including all federal, state or local law enforcement officers, who have any information or knowledge whatsoever regarding the facts and the allegations contained in the forfeiture complaint, including all persons who were involved, and/or continue to be involved, in the investigation of the underlying facts involved in the seizure of the defendant Property, who were involved in the seizure itself and/or were or continue to be involved in the

4

investigation of the allegations set forth in the "Facts" section of the
Forfeiture Complaint, and the nature and substance of their
information or knowledge.

*Claimants' Motion to Compel (#31), Exhibit A, Request for Production No. 1.*[2]

In support of its motion to stay discovery, the Government has submitted ex parte and under seal an affidavit by Robert Norris, a Special Agent with the United States Internal Revenue Service, Criminal Investigations Section, regarding the nature and status of ongoing criminal investigations relating to the Claimants' alleged activities described in the civil forfeiture complaint.

In their response to the Government's motion to stay, the Claimants state that the thrust of their defense will be that UR-144 or XLR-11 are not controlled substance analogues and/or that they reasonably believed UR-144 or XLR-11 did not meet the definition of a controlled substance analogue. Claimants assert that a DEA scientist, Arthur L. Berrier, has disagreed with the conclusions of an April 2012 DEA monograph that UR-144 has a substantially similar chemical structure to JWH-18. *Defendant's Proposed Hearing Exhibit 1.*[3] Claimants also rely on a district court decision in *The Smoke Shop, LLC v. United States*, 949 F.Supp.2d 877 (E.D.Wis. 2013) in which the court "held a hearing where various experts and DEA employees testified regarding whether UR-144 and XLR-11 are controlled substance analogues." 949 F.Supp.2d at 878. Based on that hearing record, the court stated that "the overwhelming weight of opinion in the scientific community is that the chemical structures of UR-144 and XLR-11 are not substantially similar to the chemical structure of JWH-018." *Id.* at 879. Claimant Ritchie further claims that he was informed by a Drug Enforcement Administration (DEA) agent that what he was doing was legal. *Response (#39), pgs. 6-7.*

The Claimants also represent that they do not intend to assert their Fifth Amendment rights against self-incrimination and intend to participate in discovery in this forfeiture action. The Claimants qualify this prospective waiver of their Fifth Amendment privileges by stating that they

---

[2] The Government cites additional requests for production in its motion to stay to demonstrate the breadth of the Claimant's discovery requests. *Motion (#29), pgs. 8-9.*

[3] The Court orders that the Claimants' proposed hearing exhibit 1 be filed in the docket of this case in light of the Court's reference to it in this order.

1   might exercise the privilege "if the government attempted to pursue inquiry into unforeseen and

2   unrelated allegations of criminal conduct." *Id.* at *pg. 6, n. 3.*

3                                         **DISCUSSION**

4           The Government moves to stay discovery in this action pursuant to 18 U.S.C. § 981(g)(1)

5   which states that "[u]pon the motion of the United States, the court shall stay the civil forfeiture

6   proceeding if the court determines that civil discovery will adversely affect the ability of the

7   Government to conduct a related criminal investigation or the prosecution of a related criminal

8   case." Section 981(g)(3) states that "the court may determine that a stay is unnecessary if a

9   protective order limiting discovery would protect the interest of one party without unfairly limiting

10  the ability of the opposing party to pursue the civil case.  In no case, however, shall the court

11  impose a protective order as an alternative to a stay if the effect of such protective order would be

12  to allow one party to pursue discovery while the other party is substantially unable to do so."

13          Section 981(g)(4) states that "the terms 'related criminal case' and 'related criminal

14  investigation' means an actual prosecution or investigation in progress at the time at which the

15  request for stay, or any subsequent motion to lift stay is made."  In determining whether a criminal

16  case or investigation is related, the court is required to consider the similarity between the parties,

17  witnesses, facts and circumstances involved in the two proceedings without requiring an identity

18  with respect to any one or more factors.  Section 981(g)(5) states that in appropriate cases, the

19  Government may submit evidence ex parte in order to avoid disclosing any matter that may

20  adversely affect an ongoing criminal investigation or pending criminal trial.

21          In support of its motion to stay, the Government cites *United States v. All Funds on Deposit*

22  *in Suntrust Acc. NU.*, 456 F.Supp.2d 64, 65-66 (D.D.C. 2006) in which the court, after quoting

23  Section 981(g)(1), states:

24              Two things are obvious from this language: 1) the Government must
                satisfy the court that civil discovery would adversely affect the
25              criminal case; if so, then 2) the court must grant the stay.  Indeed,
                "civil discovery may not be used to subvert limitations on discovery
26              in criminal cases, by either the government or by private parties."
                *McSurely v. McClellan,* 426 F.2d 664, 671–72 (D.C.Cir. 1970).
27              However, the government must make an actual showing that civil
                discovery will adversely affect the investigation or prosecution of a
28              related criminal case. *U.S. v. GAF Financial Servs., Inc.,* 335

                                              6

1    F.Supp.2d 1371, 1373 (S.D.Fla. 2004); *cf. U.S. v. All Funds*
2    *($357,311.68) Contained in N. Trust Bank of Fla. Account,* No.
     04–1476, 2004 WL 1834589, at *3–4 (N.D.Tex. Aug. 10, 2004)
3    (motion to stay denied because government did not show that civil
     discovery would adversely affect its criminal investigation).  The
4    parties and the facts of the civil and criminal cases need not be
     identical but must be similar. *GAF Financial Servs.,* 335 F.Supp.2d
5    at 1373.  Where a criminal investigation and a civil forfeiture action
     have common facts, similar alleged violations and some common
6    parties, the actions are clearly related. *Id.*  Where civil discovery
     would subject the government's criminal investigation to "early and
7    broader civil discovery than would otherwise be possible in the
     context of the criminal proceeding," a stay should be granted. *U.S. v.*
8    *One Assortment of Seventy–Three Firearms,* 352 F.Supp.2d 2, 4
     (D.Me. 2005).

9         The court in *United States v. Real Property Located at 149 G Street, Lincoln, California*,

10   2013 WL 2664770, *3 (E.D.Cal. 2013) further states:

11        The language employed by Section 981(g)(1) reflects an amendment
          by the Civil Asset Forfeiture Act of 2000 that "broadened the stay
12        relief significantly" and removed the requirement that the
          Government show good cause.  *See U.S. v. $1,026,781.61 in Funds*
13        *from Florida Capital Bank,* No. CV 09–04381, 2009 WL 3458189, at
          * 2 (N.D.Cal. Oct.21, 2009) (quoting *United States v. All Funds*
14        *Deposited in Account No. 200008524845,* 162 F.Supp.2d 1325, 1330
          (D.Wyo. 2001)). As such, Section 981(g)(1) does not require a
15        particular showing but does instead require the court to determine
          whether the civil discovery will interfere with the criminal
16        investigation.

17        In *Real Property Located at 149 G Street, Lincoln, California*, the Government contended

18   that "the adverse impact of full discovery during the pendency of a related criminal proceeding

19   arises from the ability to seek the identity and take the depositions of prosecution witnesses,

20   including case investigators and agents, and the obtaining of grand jury and other investigative

21   material not permitted under Fed.R.Crim.P. 16." *Id.* at *3.  In finding that this argument supported

22   entry of a stay, the court noted that "[c]ourts have long stayed civil forfeiture cases based upon

23   anticipatory discovery issues[,]" and quoted  *All Funds on Deposit in Suntrust Acc. NU., supra,* that

24   a stay should be granted where civil discovery would subject the government's criminal

25   investigation to earlier and broader discovery than would be possible in a criminal proceeding.  *Id* .

26        The affidavit of Special Agent Norris, submitted ex parte in accordance with Section

27   981(g)(5), satisfies the Court that the Government is conducting an actual ongoing criminal

28   investigation that involves the same parties, witnesses, facts and circumstances at issue in this case-

7

1   -the alleged production and distribution of controlled substance analogues, UR-144 or XLR-11.  In

2   order to prevail in this civil forfeiture action, the Government will have to prove the same elements

3   that it would be required to prove in a criminal prosecution for distribution or conspiracy to

4   distribute controlled substance analogues.  As stated in *United States v. Klecker*, 348 F.3d 69, 71

5   (4th Cir. 2003), the Government must prove (1) substantial *chemical* similarity between the alleged

6   analogue and a controlled substance, *see* 21 U.S.C. § 802(32)(A)(i); (2) actual, intended or claimed

7   *physiological* similarity (in other words, that the alleged analogue has effects similar to those of a

8   controlled substance or that the defendant intended or represented that the substance would have

9   such effects); *see* 21 U.S.C. § 802(32)(A)(ii) or (iii); and (3) intent that the substance be consumed

10  by humans.  The Seventh Circuit also requires the Government to prove that defendant knew the

11  substance in question was a controlled substance analogue.  *United States v. Turcotte*, 405 F.3d

12  515, 522-23, 527 (7th Cir. 2005).

13         It is not for the Court to decide on this motion to stay whether UR-144 or XLR-11 are, in

14  fact, controlled substance analogues.  Contrary to the Claimants' assertion, however, there appears

15  to be considerable scientific and legal debate on this issue.  In *United States v. Riley*, 2014 WL

16  537013, *6 (D.Nev. 2014), the court denied the defendants' motion for a *Daubert* hearing as to

17  whether the Government's experts were qualified to testify on the issue of whether UR-144 or

18  XLR-11 are controlled substance analogues.  In so ruling, the court commented on *The Smoke*

19  *Shop, LLC v. United States*, 949 F.Supp.2d 877 (E.D.Wis. 2013) as follows:

20         Additionally, the court is reluctant to credit *The Smoke Shop's*
           scientific conclusion because it did not cite any journal articles or
21         provide any reasoning for its conclusion that "the overwhelming
           weight of opinion in the scientific community is that the chemical
22         structures of UR–144 and XLR–11 are not substantially similar to the
           chemical structure of JWH–018."  *See The Smoke Shop, LLC*, 949
23         F.Supp.2d at 877.  On the contrary, the court's review of relevant case
           law indicates that *The Smoke Shop's* conclusion regarding UR–144,
24         XLR–11, and JWH–018 is not definitive.  In *United States v.*
           *Fredida*, the Honorable Roy B. Dalton, Jr., U .S. District Court
25         Judge, engaged in an extensive scientific examination of the same
           substances and concluded that they are "substantially similar" for
26         purposes of the Federal Analogue Act, 21 U.S.C. § 813.  *See*
           *Fredida*, 942 F.Supp.2d, 1270, 1277–79 (M .D.Fla. 2013). Given
27         Judge Dalton's extensive analysis of the substances in question, the
           court is persuaded to follow *Fredida,* not *The Smoke Shop.*

28

1    *See also United States v. Bays*, 2014 WL 3764876, *7 (N.D. Tex. 2014), noting that *The*

2    *Smoke Shop* has been criticized by numerous courts, including *Riley*.

3        The court in *United States v. Fredida* denied defendant's motion to dismiss the indictment

4    on the grounds that UR–144 and XLR–11 are not controlled substance analogues or that the

5    Analogue Act is void for vagueness as applied to these substances.  As to the first issue, the court

6    held that whether the chemical structures of UR–144 and XLR–11 are substantially similar to

7    JWH-18 are issues of fact for determination at trial.  942 F.Supp.2d at 1272-73.[4]  In rejecting the

8    defendant's second argument that the Analogue Act is void for vagueness as applied to these

9    substances, the court stated:

10            While Defendant posits several technical and detailed reasons why
                the substitutions present in these compounds are substantial changes
11            to their chemical structures as compared to JWH–18, the
                Government need not overcome the critical eye of chemists and other
12            experts.  Rather, it must merely show that ordinary people would be
                able to determine whether UR–144 and XLR–11 are proscribed
13            analogues of JWH–18. *See United States v. Carlson,* 87 F.3d 440,
                443–44 (11th Cir. 1996); *see also United States v. Brown,* 279
14            F.Supp.2d 1238, 1241 (S.D.Ala. 2003). The substances at issue in
                this case share the same core chemical structure with JWH–18. The
15            only meaningful difference between these compounds is a
                replacement found within the 3–position substituent.  (*See, e.g.,* Doc.
16            40–2, Harris Aff. ¶¶ 8, 10.)  A reasonable layperson who examines
                the two-dimensional drawings of the chemical structures of UR–144,
17            XLR–11, and JWH–18 could plausibly conclude that such substances
                are substantially similar. This is all that is required.

18    *Fredida*, 942 F.Supp.2d at 1279.

19        The *Fredida* court also found that the Government sufficiently alleged that defendant

20    represented or intended UR–144 or XLR–11 to have a stimulant, depressant or hallucinogenic

21    effect on the central nervous system that is substantially similar to the effect on the central nervous

22    system of a controlled substance in schedule I or II, which satisfies one of the alternative prongs for

23    proving that a substance is a controlled substance analogue.  *See* Section 802(32)(A)(iii).  *Id.* at

24    1280.  The court had reservations, however, as to whether the expert testimony presented by the

25

26        ────────────────

27            [4] Courts have also declined to decide on a motion to dismiss or for summary judgment in a civil
         forfeiture action whether an underlying substance is a controlled substance analogue.  *See United States v.*
28       *$2,200,000 in U.S. Currency*, 2014 WL 1248663, *10 (D.Md. 2014) and *United States v. Approximately*
         *$50,205.00 in U.S. Currency*, 2013 WL 3729573 (E.D.Wis. 2013).

1   Government at the hearing was sufficient to scientifically establish that UR–144 or XLR–11 have a

2   stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially

3   similar to the effect on the central nervous system of a controlled substance in schedule I or II under

4   the other alternative prong.  *See*  Section 802(32)(A)(ii).   The court noted, however, that "the

5   Government may be able to support the admissibility of its experts' opinions regarding the

6   pharmacological effects of UR-144 and XLR-11 at trial." *Id.* at 1282.

7        A recent decision in another case casts doubt on Claimant Ritchie's assertion that a DEA

8   agent told him that what he was doing was legal.  In *United States v. Henry*, 2014 WL 1230238

9   (S.D.Ala. 2014), the defendant was charged with conspiracy to import and distribute a controlled

10  substance analogue, XLR-11.  The defendant worked at a business run by Mr. Ritchie which

11  manufactured or sold substances containing XLR-11.  The defendant alleged that she was told by

12  Mr. Ritchie that he had met with DEA agents in July 2012 who "felt they were operating legally

13  and were going to send samples of their products to the DEA laboratory.  The defendant was also

14  present at a September 2012 meeting during which a DEA agent advised Mr. Ritchie that "as long

15  as RITCHIE's production of 'spice' did not result in the violation of any laws regarding the

16  manufacture of controlled substances, law enforcement could not or would not interfere with his

17  right to engage in commerce."  *Id.* at *1.   The defendant moved to dismiss the indictment due to

18  entrapment by estoppel.  The court denied defendant's motion on the ground that the defense

19  involved disputed factual issues to be resolved at trial.  *Id.* at *3.  The court also agreed with the

20  government's counter arguments that the defense probably failed as a matter of law.[5]  First, the

21  court stated that entrapment by estoppel only applies to statements made directly to the defendant

22  by a government agent. *Id.*  at *3.  In regard to the statement allegedly made to Mr. Ritchie in

23  September 2012, the court further stated:

> "Entrapment by estoppel occurs when a government official
> incorrectly informs a defendant that certain conduct is legal...."
> *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998);
> *accord Thompson*, 25 F.3d at 1564; *United States v. Billue*, 994 F.2d

---

[5] Because the Government did not file a motion to exclude evidence at trial relating to the defense,
the court made no formal ruling on that issue.

1562, 1568 (11th Cir. 1993). "It is not sufficient that the government official's comments were vague or even contradictory; rather, the defendant must show that the government affirmatively told him the proscribed conduct was permissible...." *United States v. Hancock,* 231 F.3d 557, 567 (9th Cir. 2000); *accord United States v. Aquino–Chacon,* 109 F.3d 936, 939 (4th Cir. 1997). The government argues that the September 2012 episode does not satisfy this requirement. (Doc. 94 at 25).

The DEA agent did not tell Ritchie in September 2012 that XLR11 was not a controlled substance analogue. All he said was that, "even though compounds RITCHIE was producing and distributing *may not* be controlled at the present time, the laws may change that would make the compounds illegal in the future." (Doc. 76, Exhibit 5 at 10). A statement that something "may not be" illegal is, by definition, not a statement that something "is not" illegal, since what may not be illegal also may be illegal. The natural reading of the statement is that, *even if* the compounds are legal today, they may become illegal tomorrow. Such a statement plainly is not an affirmative representation that the compounds are in fact legal today.

*United States v. Henry*, 2014 WL 1230238, at *4.

This Court does not opine or even suggest that the Claimants will not be able to mount a successful defense to the Government's civil forfeiture action. However, to the extent the Claimants have addressed the anticipated evidence in an attempt to persuade the Court that the Government only seeks a stay to delay its inevitable defeat in this case, the Court is not persuaded. There appear to be legitimate factual issues as to whether UR-144 and XLR-11 are controlled substance analogues, whether the Claimants produced or distributed the products with the intention that they be consumed by humans, and whether Claimants knew the products contained controlled substance analogues.

Discovery on these issues in the civil forfeiture action would expose Government investigators, law enforcement agents, and lay and expert witnesses to depositions and other civil discovery during the midst of an ongoing criminal investigation or investigations involving the same parties, witnesses, facts and circumstances. As evidenced by their requests for production of documents and interrogatories, the Claimants broadly seek all documents and information relating to any federal, state or local law enforcement investigation or inquiry relating to the subject matter of this action, including search warrant affidavits, applications for pen registers, trap and trace devices and any other electronic surveillance equipment, and grand jury information. The

1   Government has therefore met its burden to show that civil discovery in this case will adversely

2   affect the Government's ongoing criminal investigation and that entry of a stay is warranted.

3           The Claimants rely on *United States v. Sum of $70,990,605*, 2014 WL 1509453 (D.D.C.

4   2014) and *United States v. All Funds ($357,311.68) Contained in Northern Trust Bank of Florida*,

5   2004 WL 1834589 (N.D. Tex 2004), in arguing that the Government has failed to demonstrate that

6   the ongoing criminal investigations will *actually* be adversely affected by civil discovery in this

7   forfeiture action. The Government in those cases, however, could not or did not point to any actual

8   discovery sought by the claimants to support its requests for stay.  Nor did the Government submit

9   any ex parte affidavits regarding the ongoing criminal investigations or how they would be

10  adversely affected by discovery in the civil forfeiture actions.  Here, the Claimants have clearly

11  revealed their broad discovery objectives which, as stated above, include requests for all documents

12  and information about related past or ongoing criminal investigations.[6]  The Government has also

13  submitted an ex parte affidavit by Special Agent Norris which describes the ongoing investigations

14  and the adverse effect of civil discovery thereon.

15          The funds that are the subject matter of this action were seized from the Claimants' bank

16  accounts on July 31, 2012, now over two years ago.  The civil forfeiture complaint was filed

17  approximately six months later in January, 2013.  This action remained sealed and stayed pursuant

18  to Order (#4) for another year until it was unsealed and the stay was lifted in January, 2014.  The

19  Government now requests another stay of unspecified duration.  While the Government represents

20  that it is continuing to conduct a criminal investigation relating to the Claimants, it has not

21  provided the Court with any specific information as to when indictments will be sought or the

22  criminal investigation otherwise brought to a conclusion.

23  . . .

24

25          [6] During the hearing on this motion, Claimants took the fall back position that the Court should
26  permit the Claimants to obtain the identities of the witnesses in this case and take their depositions.  Since
    this is likely to include the Government's witnesses in any prosecution arising out of the ongoing criminal
27  investigation, the Court also finds that such discovery would adversely affect the ongoing criminal
    investigation, although arguably not to the same degree as Claimants' broad written discovery requests.
28

1    In *United States v. Four (4) Contiguous Parcels of Real Property Situated in Louisville,*

2  *Jefferson County, Ky.*, 864 F.Supp. 652, 655-56. (W.D.Ky. 1994), the court denied the

3  government's motion for stay pending the completion of a related criminal prosecution under the

4  predecessor version of Section 981(g) which required a showing of good cause.  The government

5  had held the claimants' property for 18 months at the time it applied for the stay.  The court stated

6  that a lengthy stay pending resolution of the Government's criminal case would be unduly

7  burdensome to due process because the likely duration of the requested stay was uncertain.  The

8  court cited *Landis v. North American Co.*, 299 U.S. 248, 257, 57 S.Ct. 163, 167 (1936) for the

9  proposition that a stay of indefinite duration cannot be granted.  In *United States v. All Funds*

10  *Deposited in Account No. 20008521845*, 162 F.Supp.2d 1325, 1332 (D.Wyo. 2001), the court,

11  applying the current version of Section 981(g) and citing the  concerns raised in *United States v.*

12  *Four (4) Contiguous Parcels of Real Property Situated in Louisville, Jefferson County, Ky.*, limited

13  the stay to 90 days.  The court stated:

> 14    This court is mindful of the burdens civil forfeiture places on
> claimants/defendants.  However, the current stay is for a determined
> 15    length of time. The Supreme Court has held that stays which are
> indefinite will not be upheld. *Landis v. North American Co.*, 299
> 16    U.S. 248, 257, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (stating "[t]he stay
> is immoderate and hence unlawful unless so framed in its inception
> 17    that its force will be spent within reasonable limits, so far at least as
> they are susceptible of prevision and description."). If there are to be
> 18    any subsequent motions for a stay, the Government will have to meet
> the burdens placed on it by 18 U.S.C.A. § 981(g). The Court will
> 19    continue to monitor the litigation and ensure that it proceeds in a
> timely manner.

20

21    Under the circumstances in this case, the Court will grant a stay of discovery for 90 days.  If

22  the Government moves for a extension of the stay, it should show either that criminal charges have

23  been filed against the Claimants and/or others, or that the filing of such charges is imminent.

24  Accordingly,

25    **IT IS HEREBY ORDERED** that Plaintiff's (the "Government") Motion to Stay Discovery

26  Pursuant to 18 U.S.C. § 981(g) (#29) is **granted**, in part.

27  . . .

28  . . .

1

    **IT IS FURTHER ORDERED** that discovery in this action is stayed until **November 17,**

2  **2014 at 5:00 p.m, Pacific Time**, at which time the stay of discovery shall automatically expire

3  unless further extended by order of the Court prior thereto.

4          DATED this 15th day of August, 2014.

5

6                                                    _____

7                                                    GEORGE FOLEY, JR.
                                                     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              14