1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case Nos.:  2:13-cv-00100-JCM-GWF |
| | )                       2:13-cv-00947-JCM-GWF |
| vs. | ) |
| | ) |
| $177,844.68 in UNITED STATES | ) **ORDER** |
| CURRENCY, *et al.,* | ) |
| | ) |
| $1,002,327.00 in UNITED STATES, | ) |
| CURRENCY, *et al.,* | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on the Plaintiff United States of America's Amended
Second Request to Stay Discovery (#53, #47)[1], filed on November 24, 2014.[2]  The Claimants,
Stephanie Ritchie, Burton Ritchie and ZIW, LLC, filed their Response (#55, #48) on December 5,
2014.  The Government filed its Reply (#60, #53) on December 15, 2014.  The Court conducted a
hearing in this matter on January 6, 2015.

## BACKGROUND

The Government filed its Verified Complaint for Forfeiture *In Rem* (#1) in Case No. 2:13-
cv-100-JCM-GWF on January 18, 2013.  That complaint involves the seizures of $177,844.68 and
$296,746.66 from two accounts in the Gulf Coast Community Bank in Pensacola, Florida on July

---

[1] The Government filed its amended second request in both cases.  The first listed docket number is
for the filings in Case No. 2:13-cv-00100-JCM-GWF.  The second docket number is for the filings in Case
No. 2:13-cv-00947-JCM-GWF.  Where the Court refers to only one docket number, the reference is to the
docket number in Case No. 2:13-cv-00100-JCM-GWF.

[2] The Government filed its original Second Request to Stay Discovery (#51, #45) ex parte and
under seal on November 17, 2014.  The Court denied this motion without prejudice, directing the
Government to file an unsealed motion to continue the stay.  *Order (#52, #46).*

31, 2012.  On May 29, 2013, the Government filed its Verified Complaint for Forfeiture *In Rem (#1)* in Case No. 2:13-cv-00947-JCM-GWF.  That complaint involves the seizures on January 3, 2013 of $1,002,327.00 from an account in Fidelity Investments, Covington, Kentucky; $46,173.56 from Charles Burton Ritchie's Bank of America account in Las Vegas, Nevada; $39,451.60 from an account in the Gulf Coast Community Bank in Pensacola, Florida; a 2012 Ford F-250 truck; and a 2011 Chevrolet 3500 Express Van.  Shortly after filing the complaints, the Government also filed ex parte motions to seal and stay the civil actions pending the completion of an ongoing related criminal investigation.  The Court granted the motion to seal and stay Case No. 2:13-cv-100-JCM-GWF on January 24, 2013.  *Order (#4)*.  It granted the motion to seal and stay Case No. 2:13-cv-947-JCM-GWF on June 25, 2013.  *Order (#6)*.

These actions remained sealed and stayed until January 23, 2014, when the Court granted the Government's Motion to Unseal and Lift Stay (#9, #10).  The Government stated in its motion that "[w]ithout waiving, or commenting further, on the viability of a criminal case against any or all of the principals in this civil forfeiture action, the United States represents that it has no further objection to unsealing this case; nor does it object to the stay being lifted and case moving forward." *Motion (#8, #9), pgs. 1-2.*  The Government thereafter served the complaints.  On March 11, 2014, Claimants Burton Ritchie, ZIW, LLC, Stephanie Ritchie and Benjamin E. Galecki filed their verified statements of claim.  The Claimants filed their answers to the complaints on March 31, 2014.

On June 6, 2014, the Government filed a motion to again stay discovery in these actions pending the completion of a related criminal investigation(s).  The Government's motion was apparently prompted by the Claimants' service of broad ranging requests for production of documents and interrogatories in April 2014.  *See Motion to Stay Discovery (#36) (redacted version), pgs. 8-9.*  On August 15, 2014, the Court granted the Government's motion to stay, in part, by limiting the duration of the stay until November 17, 2014.  *Order (#46).*  The order stated: "Under the circumstances in this case, the Court will grant a stay of discovery for 90 days.  If the Government moves for a (sic) extension of the stay, it should show either that criminal charges have been filed against the Claimants and/or others, or that the filing of such charges is imminent."

1    *Id., pg. 13.*

2          Order (#46) summarized the Government's allegations in its forfeiture complaints.  As

3    stated therein, the Government alleges that the seized funds and automobiles were derived from the

4    knowing manufacture and distribution of controlled substance analogues as defined in 21 U.S.C. §

5    802(32)(A) by Charles Burton Ritchie, ZIW, LLC and Benjamin Galecki.  The substances in

6    question allegedly contained 1-(5-Fluoropentyl)-3-(2,2,2,3-tetramethylcyclopropoyl, commonly

7    known as UR-144, which the Government alleges is an analogue of JWH-18, a Schedule I

8    controlled substance.  *Order (#46), pgs. 2-4.*  In their response to the Government's motion to stay,

9    the Claimants stated that the thrust of their defense in this forfeiture action, and in any future

10   criminal prosecution, will be that UR-144 or XLR-11 are not controlled substance analogues and/or

11   that they reasonably believed UR-144 or XLR-11 did not meet the definition of a controlled

12   substance analogue.  *Order (#46), pg. 5.*

13         In its Amended Second Request to Stay Discovery, the Government asserts that its criminal

14   investigation relating to the Claimants' alleged production and distribution of controlled substance

15   analogues is continuing and headed toward completion.  As evidence of the progress of the

16   investigation, the Government states that six individuals who allegedly conspired with the

17   Claimants were indicted in the Southern District of Alabama in April 2013.  Five of those

18   defendants subsequently pled guilty in 2014 and were awaiting sentencing at the time the

19   Government filed its second request to stay discovery.  The trial of the sixth defendant, Travis

20   Gross, took place in December, 2014.  The Government further stated that the prosecutor in the

21   Southern District of Alabama has advised that the criminal investigation of Mr. Ritchie, Mr.

22   Galecki and their corporations will be completed in or about the Spring of 2015.

23         The Claimants state in their response that although the five persons who pled guilty in

24   Alabama were initially charged with analogue drug counts, those charges were dismissed by the

25   Government and the defendants instead pled guilty "to violations of FDA and Customs regulations

26   and not analogue drug counts."  *Response (#55), pg. 2.*  Those charges apparently involved the

27   fraudulent importation of XLR-11 into the United States in violation of 18 U.S.C. § 545.  The

28   Claimants further state that prior to trial the Government dismissed the analogue drug counts

against Travis Gross.  Claimants assert that the decision to dismiss those counts resulted from the court's pretrial order that the Government would be required to prove that the defendant knew that XLR 11 has a chemical structure substantially similar to that of a controlled substance and that he knew (or intended or represented) that XLR 11 has stimulant, depressant or hallucinogenic effects substantially similar to, or greater than, those of a controlled substance.  The court also held that Mr. Gross would be allowed to introduce evidence regarding statements allegedly made to him that an attorney and a DEA agent had stated that the product was legal.  *Id., pg. 2, Exhibits 1-A, 1-B.* The Claimants again suggest that the Government may be reluctant to actually pursue an indictment of the Claimants for violation of the Controlled Substance Analogue Act.[3]

## DISCUSSION

Title 18 of the United States Code, Section 981(g)(1) states as follows:

> Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

Section 981(g)(3) further states:

> The court may determine that a stay is unnecessary if a protective order limiting discovery would protect the interest of one party without unfairly limiting the ability of the opposing party to pursue the civil case.  In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so.

Section 981(g)(4) states that "the terms 'related criminal case' and 'related criminal investigation' means an actual prosecution or investigation in progress at the time at which the request for stay, or any subsequent motion to lift stay is made."  Section 981(g)(5) states that in

---

[3] This Court has confirmed through review of the docket in *United States v. Travis Gross*, United States District Court for the Southern District of Alabama, Case No. 1:13-cr-00268-WS-C, that the counts of the indictment that charged Mr. Gross with conspiracy to distribute controlled substance analogues in violation of 21 U.S.C. § 846 and conspiracy to import controlled substance analogues in violation of 21 U.S.C. § 963 were dismissed prior to trial.  Mr. Gross was found guilty of a conspiracy to fraudulently and knowingly import merchandise, specifically XLR 11, knowing it to have been imported and brought into the United States contrary to law in violation of 17 U.S.C. 545; of money laundering in violation of 18 U.S.C. § 1957; and of conspiracy to launder money in violation of 18 U.S.C. § 1956(h).  *See Order (#102).*

4

appropriate cases, the Government may submit evidence ex parte regarding its criminal investigation in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial.

Both sides have cited cases in support of their respective positions as to whether a further stay of this action should be granted or denied.  The Government cites *United States v. All Funds on Deposit in Suntrust Acc. NU.*, 456 F.Supp.2d 64, 65-66 (D.D.C. 2006) in which the court, after quoting Section 981(g)(1), states:

> Two things are obvious from this language: 1) the Government must satisfy the court that civil discovery would adversely affect the criminal case; if so, then 2) the court must grant the stay.  Indeed, "civil discovery may not be used to subvert limitations on discovery in criminal cases, by either the government or by private parties." *McSurely v. McClellan,* 426 F.2d 664, 671–72 (D.C.Cir. 1970). However, the government must make an actual showing that civil discovery will adversely affect the investigation or prosecution of a related criminal case. *U.S. v. GAF Financial Servs., Inc.,* 335 F.Supp.2d 1371, 1373 (S.D.Fla. 2004); *cf. U.S. v. All Funds ($357,311.68) Contained in N. Trust Bank of Fla. Account,* No. 04–1476, 2004 WL 1834589, at *3–4 (N.D.Tex. Aug. 10, 2004) (motion to stay denied because government did not show that civil discovery would adversely affect its criminal investigation).  The parties and the facts of the civil and criminal cases need not be identical but must be similar. *GAF Financial Servs.,* 335 F.Supp.2d at 1373.  Where a criminal investigation and a civil forfeiture action have common facts, similar alleged violations and some common parties, the actions are clearly related. *Id.*  Where civil discovery would subject the government's criminal investigation to "early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding," a stay should be granted. *U.S. v. One Assortment of Seventy–Three Firearms,* 352 F.Supp.2d 2, 4 (D.Me. 2005).

The court in *United States v. Real Property Located at 149 G Street, Lincoln, California*, 2013 WL 2664770, *3 (E.D.Cal. 2013) further states:

> The language employed by Section 981(g)(1) reflects an amendment by the Civil Asset Forfeiture Act of 2000 that "broadened the stay relief significantly" and removed the requirement that the Government show good cause.  *See U.S. v. $1,026,781.61 in Funds from Florida Capital Bank,* No. CV 09–04381, 2009 WL 3458189, at * 2 (N.D.Cal. Oct.21, 2009) (quoting *United States v. All Funds Deposited in Account No. 200008524845,* 162 F.Supp.2d 1325, 1330 (D.Wyo. 2001)). As such, Section 981(g)(1) does not require a particular showing but does instead require the court to determine whether the civil discovery will interfere with the criminal investigation.

5

In *Real Property Located at 149 G Street, Lincoln, California*, the government contended that "the adverse impact of full discovery during the pendency of a related criminal proceeding arises from the ability to seek the identity and take the depositions of prosecution witnesses, including case investigators and agents, and the obtaining of grand jury and other investigative material not permitted under Fed.R.Crim.P. 16." *Id.* at *3. In finding that this argument supported entry of a stay, the court noted that "[c]ourts have long stayed civil forfeiture cases based upon anticipatory discovery issues[,]" and quoted *All Funds on Deposit in Suntrust Acc. NU., supra,* that a stay should be granted where civil discovery would subject the government's criminal investigation to earlier and broader discovery than would be possible in a criminal proceeding. *Id. See also United States v. $1,026,781.61 in Funds from Florida Capital Bank*, 2013 WL 4714188 (C.D.Cal. 2013) (granting stay) and *United States v. 2009 Dodge Challenger*, 2011 WL 6000790 (D.Or. 2011) (granting stay)

The Claimants cite other district court cases in which the courts were unwilling to grant a stay based on the government's general assertions that discovery in the civil forfeiture action would adversely affect the government's criminal investigation. In *United States v. $423,059.02*, 2012 WL 1950218, *1 (W.D.Mo. 2012), the government contended in support of its motion to stay that:

> [a]llowing claimants to conduct civil discovery at this juncture would interfere with the criminal investigation by compromising the identities of cooperating witnesses, and forecasting the Government's intent to interview additional prospective witnesses. It would also provide advance discovery of the government's investigative and prosecution strategies, and allow claimants earlier and broader discovery than they would be allowed in the criminal context under Rule 16. Civil discovery would also expose the Government's witnesses to cross-examination and the law enforcement officers to testimonial declarations before the investigation is complete, and all facts are known. Finally, it would permit Claimants to learn about the nature and scope of the investigation and to anticipate future investigative action.

In holding that these contentions were insufficient to justify a stay under § 981(g)(1), the court stated:

> Most of these conclusory reasons for a stay are similar to the ones rejected in *United States v. All Funds ( $357,311. 68) Contained in N. Trust Bank of Fla. Account No. 7240001868,* No. Civ. A. 3:04–1476, 2004 WL 1834589, at * 2 ( N.D.Tex. Aug. 10, 2004). In that case the court observed that "[ t]he Government's arguments do

6

nothing more than speculate about how civil discovery will adversely affect its criminal investigation. Under either of the Government's theories, *every* civil forfeiture case with a related criminal investigation is entitled to a stay." *Id.* The court noted "[ t]here is no presumption that civil discovery, in itself, automatically creates an adverse affect on the government's related criminal proceeding." *Id.*

2012 WL 1950218, at *1

In *United States v. Sum of $70,990,605*, 4 F.Supp.3d 209, 214-15 (D.D.C. 2014), the court recognized that certain civil discovery requested by the claimants, such as the identity of confidential informants, statements of all government witnesses, and the depositions of law enforcement officers involved in the investigation could adversely affect the criminal investigation or prosecution. The court concluded, however, that a well crafted protective order could permit civil discovery to proceed in the forfeiture action, while protecting against adverse effect on the government's investigation. *See also United States v. Real Property and Premises*, 657 F.Supp.2d 1060, 1063-65 (D.Minn. 2009) (denying stay of civil forfeiture action because the government failed to demonstrate that discovery in the civil forfeiture action would adversely affect government's criminal investigation or prosecution of claimants).

The Claimants also raise a due process argument against any further extension of the stay of this action. The Claimants argue that over two years have passed since the initial seizures in July 2012, and that it will be at least another year before these civil forfeiture actions are adjudicated. They argue that a further stay and delay of this action, during which they are deprived of their property, violates their rights to due process of law.

In *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 103 S.Ct. 2005 (1983), the Supreme Court applied the four-factor balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972) in determining whether the government's 18-month delay in filing a civil forfeiture action violated the claimant's right to due process of law.[4] Under the *Barker* test, the court weighs the following factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's (claimant's) assertion of his right and (4) the prejudice to defendant. *Eight Thousand*

---

[4] *Barker v. Wingo* involved the government's alleged post-indictment delay in bringing a criminal defendant to trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Eight Hundred & Fifty Dollars*, 461 U.S. at 564, 103 S.Ct. at 2012.  In applying these factors in a case involving the government's alleged delay in bringing a civil forfeiture action, the Court stated that the overarching factor is the length of the delay.  The Court regarded a delay of 18 months "as quite significant" and stated that "[b]eing deprived of this substantial sum of money for a year and a half is undoubtedly a significant burden."  *Id.*, 461 U.S. at 565, 103 S.Ct. at 2012.  Closely related to the delay is the reason the Government assigns to the delay.  *Id.*  The Court stated that pending criminal proceedings may present a justification for delay because:

> A prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding which–as here–may often include forfeiture as part of the sentence.  A prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution. . . . Again, however, the pendency of criminal proceedings is only an element to be considered in determining whether delay is unreasonable.  Although federal criminal proceedings are generally fairly rapid since the advent of the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.* (1976 ed. and Supp.5), the pendency of a trial does not automatically toll the time for instituting a forfeiture proceeding.

> *Id.*, 461 U.S. at 567, 103 S.Ct. at 2013.

The Supreme Court found that the government had not unreasonably delay bringing the civil forfeiture action.  As part of its determination, the Court found, under the third *Barker* factor, that the claimant had not actively asserted his right to seek recovery of the seized funds.  The Court stated that the claimant could have filed an equitable action to compel the government to file a forfeiture action or have brought a motion under Rule 41 of the Federal Rules of Criminal Procedure for the return of the seized property.  The Court noted that the claimant "did none of these things and only occasionally inquired about the result of the petition for mitigation or remission and asked that the Secretary reach a decision promptly.  The failure to use these remedies can be taken as some indication that [the claimant] did not desire an early judicial hearing."  *Id.*, 461 U.S. at 569, 103 S.Ct. at 2014.  In regard to the fourth factor, whether claimant has been prejudiced by the delay, the Court  stated that "[t]he primary inquiry is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence."  *Id.* 2014.  The claimant pointed to no such prejudice.

8

In *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 567 (9th Cir. 1995), the Ninth Circuit held that a 30 month delay between the seizure of funds and the commencement of forfeiture proceedings, although lengthy, was not unreasonable and did not offend due process. The court noted that the district judge found that the government's conduct was not unreasonable given the unique and complex history of both the forfeiture action and the underlying criminal activity. The district court also observed that the claimant failed to request commencement of judicial forfeiture proceedings for almost one and a half years after the seizure of the currency. The court stated that "[a] party's failure to timely exercise his rights to a judicial forfeiture proceeding is a significant factor in determining whether any delay in commencing those proceedings was violative of due process. *$874,938.00 U.S. Currency*, 999 F.2d at 1326." The court also found that the delay did not prejudice the claimant's ability to defend against the impropriety of the seizure on the merits. *See also United States v. $874,938.00 U.S. Currency*, 999 F.2d 1323, 1325 (9th Cir. 1993) (holding that a delay of 11 months between the seizure and commencement of the forfeiture proceeding was not per se unreasonable).

The civil forfeiture complaints in these cases were filed within six and seven months, respectively, of the seizures. Both actions were promptly sealed and stayed, however, and the Claimants had no notice of the actions until after they were unsealed in January 2014. There is no evidence that the Claimants attempted through other means to compel the return of their seized property during the period between the initial seizures on July 31, 2012 and the filing of their statements of claim in these actions in March 2014. Since filing their answers, however, the Claimants have attempted to pursue discovery and have opposed the Government's motions for stay and for an extension of the stay.

While Claimants have not shown that their ability to defend the forfeiture action has been prejudiced by the loss of evidence or witnesses, the Court agrees that a further stay of these actions raises a legitimate issue regarding the Claimants' due process right to obtain a judicial determination whether their assets should be forfeited. The evidentiary issues relating to both the civil forfeiture actions and in the related criminal investigations or prosecutions appear to be well known to both the Government and the Claimants. Those issues are whether the chemical structure

of UR-144 or XLR-11 are substantially similar to JWH-18, a Schedule I controlled substance, and/or whether the Claimants knew or believed that their products were controlled substance analogues.  In regard to the second issue, the Claimants allege that they relied on an alleged statement of a DEA agent to Mr. Ritchie that the products were legal.  While some discovery in this case may require the Government to produce witnesses or evidence in support of its position that the subject products are controlled substance analogues, there does not appear to be any need for the Government to disclose the identities of confidential informants or other confidential information that has been or is being developed during ongoing criminal investigations.  The disclosure of such information can also be guarded against by a protective order.  Although the Claimants previously served broad ranging discovery requests, their counsel has stated the he is willing to work with the Government to reach a mutual agreement on the scope of any necessary discovery.  The Court is not persuaded that the Government's criminal investigation in this case will be adversely affected if the stay is lifted and this case is allowed to proceed, subject to entry of a reasonable protective order, as necessary, to protect against the disclosure of confidential information relating to the Government's ongoing criminal investigation.  Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff United States of America's Amended Second Request to Stay Discovery (#53, #47) is hereby **denied**.

**IT IS FURTHER ORDERED** that counsel for the Plaintiff and Claimants shall meet and confer regarding a reasonable discovery plan and scheduling order in this action, and in regard to a protective order as discussed above.  The Court sets this matter for a further status hearing on **Wednesday, February 11, 2015, at 9:30 a.m., in Courtroom 3B**.  Counsel for the Claimants may appear by telephone and is instructed to call telephone number: **(702) 868-4910, access code 123456,** five (5) minutes prior to the hearing time.

DATED this 27th day of January, 2015.

GEORGE FOLEY, JR.
United States Magistrate Judge

10