1
2
3
4
5                          **UNITED STATES DISTRICT COURT**

6                                **DISTRICT OF NEVADA**

7
8   UNITED STATES OF AMERICA,

9                     Plaintiff,                    Case No.: 2:13-cv-100-JCM-GWF

10  vs.                                             Case No.: 2:13-cv-947-JCM-GWF

11  $177,844.68 in UNITED STATES CURRENCY,
    et al.,                                         **ORDER**
12
13                    Defendants.

14
15          This matter is before the Court on the Plaintiff United States' Motion to Quash Subpoenas

16  and Vacate Scheduled Depositions, (Docket No. 75 in Case No. 2:13-cv-100-JCM-GWF, and

17  Docket No. 67 in Case No. 2:13-cv-947-JCM-GWF), filed on April 3, 2015.[1]  The Claimants filed

18  their Response in Opposition (#85) on April 17, 2015.  Plaintiff filed its Reply (#91) on May 4,

19  2015.  The Court conducted a hearing in this matter on June 8, 2015.  At the conclusion of the

20  hearing, the Court directed the parties to file supplemental briefs.  Claimants filed their

21  Supplemental Brief (#106) on June 15, 2015.  The Plaintiff filed its Supplemental Brief (#111) on

22  June 22, 2015.  The Court also granted the Claimants' Unopposed Motion to Supplement the

23  Record (#103) to include the transcript of the deposition of DEA Special Agent Claude Cosey as

24  part of the record for the instant motion.  *See Order(#107).*

25                                  **BACKGROUND**

26          On January 18, 2013, the Plaintiff United States of America (hereinafter the "Government")

27
28          [1] Because these actions have been consolidated, the Court hereafter references only the docket
    numbers in Case No. 2:13-cv-100-JCM-GWF, except when it is also necessary to reference specific
    pleadings or documents filed in Case No. 2:13-cv-947-JCM-GWF.

filed a Verified Complaint for Forfeiture *in Rem* (#1) in Case. No. 2:13-cv-100-JCM-GWF.  The complaint sought the forfeiture of monies that were allegedly derived from the manufacture or distribution of controlled substance analogues in violation of 21 U.S.C. §§ 802(32)(A) and 813. The complaint alleged that substances seized from the Pensacola, Florida business premises of Claimants Charles Burton Ritchie, Benjamin Galecki and ZIW, LLC on or about July 26, 2012 were chemically analyzed by the Drug Enforcement Administration ("DEA") and found to contain "1-(5-Fluoropenty1)-3-(2,2,2,3-tetramethylcyclopropoyl, commonly known as UR-144." *Verified Complaint (#1)*, ¶ 21.  The complaint further stated that "UR-144 is an analogue of JWH-018, a Schedule I controlled substance." *Id.*  The Government's original complaint filed in Case No. 2:13-cv-00947-JCM-GWF on May 29, 2013 alleged that on July 25, 2012 government agents seized substances from the Claimants' business premises in Las Vegas, Nevada which were also chemically analyzed and found to contain UR-144. *Verified Complaint (#1)*, ¶¶ 18-20.

On February 27, 2015, the Government filed a motion to amend its complaint in these consolidated actions. *Motion to Amend (#67).*  Although not listed as a specific reason for amending its complaint, the Government stated that during the search of the Claimants' Florida and Nevada business premises in July 2012, "investigators found raw and unfinished, packaged 'spice' product as well as large quantities of the active analogue ingredient (to wit: XLR-11)." *Motion (#67), pg. 3.*  On March 11, 2015, Claimants filed a response stating that they had no objection to the Government's motion to amend its complaint. *Response (#68).*  The amended complaint filed on April 2, 2015 alleges that on July 25, 2012, government agents seized substances from Claimants' business premises in Las Vegas, Nevada which the DEA chemically analyzed and which "tested positive for the presence of 1-(5-Fluoropenty1)-3-(2,2,3,3-tetramethylcyclopropoyl)indole, commonly known as XLR-11." *Amended Verified Complaint for Forfeiture In Rem (#72)*, ¶¶ 24-25.  The amended complaint further alleges that on or about July 26, 2012, a DEA agent visited Claimants' business premises in Pensacola, Florida, during which the agent met with Claimant Charles Burton Ritchie.  ¶ 27.  Claimant Ritchie allegedly "told the DEA agent that '5-Flouro' is a constituent ingredient in the products he sells."  ¶ 28.  Ritchie also allegedly told the agent that he purchased 5-Flouro from China and showed the agent a receipt for a

wire transfer that had been sent to a supplier in China to purchase 5-Flouro. *Id.* The amended complaint alleges that "'5-Flouro' is a common name for XLR-11, an analogue controlled substance." ¶ 28. The amended complaint no longer alleges that substances seized from Claimants' business premises in Nevada or Florida were found to contain UR-144.

One of the statutory bases for determining whether a substance is a controlled substance analogue is whether the chemical structure of the substance "is substantially similar to the chemical structure of a controlled substance in Schedule I or II." 21 U.S.C. § 802(32)(A)(i). In opposing the Government's June 2014 motion to stay discovery, Claimant Ritchie argued that "the thrust of his defense will be that the substance found in his product, XLR-11, is not an analogue drug, that he reasonably believed XLR-11 did not meet the definition of an analogue drug and that after he made a full disclosure to the DEA of his involvement with XLR-11 he was told by them that what he was doing was legal, a representation consistent with the advice he received from lawyers and chemists familiar with the analogue drug statute." *Claimant's Response in Opposition to United States' Motion to Stay Discovery (#39)(filed July 14, 2014), pgs. 6-7.* The Claimants also stated their intention to depose two DEA chemists – Dr. Arthur Berrier and Dr. Terrence Boos. Claimants stated that "Dr. Berrier's deposition is sought because he is a DEA chemist who has stated his opinion that XLR-11 is not an analogue drug." *Id., pg. 10.* Claimants noted that "Dr. Berrier's written opinion addresses the substance UR-144. However, as the DEA's chemists have acknowledged, UR-144 and XLR-11 are different names for the same substance." *Id., pg.10, n. 8.* Claimants stated that they sought Dr. Boos' deposition " because he has, on multiple occasions, testified in public as to why the DEA was treating XLR-11 as an analogue drug. Whether XLR-11 is in fact an analogue drug goes to the heart of this case and by itself can be dispositive." *Id., pgs. 10-11.*

On August 15, 2014, the Court granted the Government's motion to stay discovery through November 17, 2014. *Order (#46).* On November 24, 2014, the Government filed a motion to extend the discovery stay. In opposition to this motion, the Claimants filed a proposed hearing exhibit which included a copy of an April 2012 monograph by the DEA's Office of Diversion Control, Drug & Chemical Evaluation Section ("ODE"), entitled "1-Pentyl-3(2,2,3,3-

tetramethycyclopropoyl)indole (UR-144) Analogue Status." This monograph concluded that "[t]he chemical structure of UR-144 and JWH-018 are substantially similar." *Proposed Hearing Exhibit 1 (#48), pgs. 17-25.* The hearing exhibit also included an April 5, 2012 email sent by Dr. Arthur Berrier to Thomas M. Duncan and Dr. Berrier's attached review of the ODE monograph. Dr. Berrier disagreed with the monograph's conclusion that the chemical structure of UR-144 is substantially similar to JWH-018 and set forth his scientific opinion as to why the substances are not substantially similar. *See Proposed Hearing Exhibit 1 (#48), pgs. 8-9.*

On January 27, 2015, the Court denied the Government's motion to extend the stay of discovery in this case. Since the lifting of the stay, the Claimants have renewed their efforts to depose Dr. Berrier and Dr. Boos. The Government asserts several reasons for quashing the subpoenas served on Dr. Berrier and Dr. Boos and entering a protective order barring their depositions. First, the Government states that it has designated two expert witnesses in this case; Dr. Michael Van Linn who will testify that the chemical structures of XLR-11 and JWH-018 are substantially similar, and Dr. Li Fang, a pharmacologist, who will testify about the similarity of the effects of XLR-11 and JWH-018 when ingested by human beings. The Government does not intend to call Dr. Boos, who supervises the departments in which Dr. Van Linn and Dr. Li Fang work, as an expert witness in this case. Nor does it intend to call Dr. Berrier as a witness. Second, the Government argues that Dr. Berrier's opinion that the chemical structures of UR-144 and JWH-018 are not substantially similar is irrelevant because the Government no longer alleges that the substances manufactured or sold by Claimants contain UR-144, and instead now alleges that the substances contain XLR-11. Third, the Government argues that Claimants' attempt to depose Dr. Berrier violates the Government's deliberative process privilege. Fourth, the Government argues that the Claimants should be precluded from deposing Dr. Boos or Dr. Berrier because a federal regulation, 5 C.F.R. § 2635.805, bars them from testifying as expert witnesses without the Government's consent. Claimants dispute each of these arguments.[2]

---

[2] During the hearing on June 8, 2015, the Court raised the issue as to whether Fed.R.Civ.Pro. 26(b)(4)(D) applies to Claimants' request to take the depositions of Dr. Berrier and Dr. Boos. At the Court's request, the parties submitted supplemental briefs regarding the application of Rule 26(b)(4)(D).

1    In their response to the Government's motion to quash the deposition subpoenas for Dr.

2    Boos and Dr. Berrier, the Claimants further explain their reasons for taking these depositions.

3    Claimants state that Dr. Boos has testified on behalf of the Government in *The Smoke Shop v.*

4    *United States*, Case No. 12–1186 (E.D.Wis. 2013) and in *United States v. Fedida*, Case No. 8:12-

5    mj-1457TGW (M.D.Fla. 2012).  Although Claimants have not attached Dr. Boos's complete

6    testimony in either case, the Court presumes that he testified that the chemical structures of UR-144

7    or XLR-11 are substantially similar to JWH-018.  Claimants state that "[w]hile testifying in

8    *Fedida*, Dr. Boos was forced to acknowledge that there is not a consensus within the scientific

9    community as to whether the compounds, identical to compounds herein, are substantially similar

10   within the definition of the Controlled Substances Act." *Claimant's Response (#85), pg. 4.*  The

11   excerpt of Dr. Boos's *Fedida* testimony actually shows that he acknowledged that there is no

12   consensus within the scientific community regarding the methodology that he used to determine the

13   substantial similarity of the substances at issue. *Claimants' Response (#85), Exhibit 1.*  Claimants

14   state that "any expert testimony that might be offered by the Government in this case, regarding the

15   substantial similarity of the substances, will be subject to challenge and possible exclusion from

16   evidence in accordance with . . . *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-

17   94 (1993).  Clearly, Dr. Boos testimony as to the lack of consensus within the scientific community

18   could be helpful to the Claimants." *Id., pg. 5.*

19   With respect to the deposition of Dr. Berrier, Claimants state that pursuant to *Brady v.*

20   *Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), the Government produced the DEA emails and Dr.

21   Berrier's review opinion regarding UR-144 in other cases, including *United States v. Fedida,*

22   *supra*; *United States v. Hummel*, Case No. 6:12-cr-209-Orl-37DAB (M.D. Fla. 2012); *United States*

23   *v. Henry*, Case No. 1:13-cr-00142-WS (S.D.Ala. 2013); *United States v. Libby*, Case No. 1:13-cr-

24   00920-TPC (S.D.N.Y. 2013); and *United States v. Gross*, Case No. 2:13-cv-00100-JCM-GWF

25   (S.D.Al. 2013).[3]  Claimants assert that these documents show that in March 2012 "the DEA's

26

27   [3] The listed case number for *United States v. Gross* is obviously incorrect since it is the case number for this action.  The Court has not confirmed whether the case numbers for other cited cases are

28   correctly listed.

5

1    Office of Diversion Control ("ODC") sent draft monographs on UR-144 and two other chemicals

2    to OFS for the purpose of obtaining comments from OFS on the chemical structure evaluation in

3    the drafts." *Id.*  OFS assigned Dr. Berrier to perform the requested chemical structure evaluations

4    and Dr. Berrier concluded that the chemical structure of UR-144 is not substantially similar to that

5    of JWH-018.  Claimants state that "[w]hen it came time for ODC to consider whether XLR-11 is an

6    unlawful analogue of JWH-018, ODC evidently elected not to seek any input from OFS." *Id., pg.*

7    *6.*  Claimants argue that the Government has waived the deliberative process privilege with respect

8    to these materials by disclosing them in other cases.

9                                              **DISCUSSION**

10          1.      **Relevance of the Expected Testimony of Dr. Berrier or Dr. Boos**.

11          Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain

12   discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  The

13   party opposing discovery has the burden of showing that the discovery is overly broad and unduly

14   burdensome or not relevant.  *Painters Joint Committee v. Employee Painters Trust Health &*

15   *Welfare Fund*, 2011 WL 4573349, *5 (D.Nev. 2011), citing *Graham v. Casey's General Stores*,

16   206 F.R.D. 251, 254 (S.D.Ind. 2002).  A party seeking to quash or modify a subpoena under Rule

17   45 "bears the burden of showing why a discovery request should be denied." *In re Suzuki*, 2014

18   WL 69083845, *2 (D.Haw. 2014), citing *Wells Fargo Bank, N.A.v. Iny*, 2014 WL 1796216, *2

19   (D.Nev. 2014) (citing *Painters Joint Committee*, 2011 WL 457449, at *5) and *Blankenship v.*

20   *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  However, the party issuing the subpoena must

21   first demonstrate that the discovery sought is relevant.  *Id.*, citing *Chevron Corp. v. Donziger*, 2013

22   WL 453808, *4 (N.D.Cal. 2013); and *Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*, 2014 WL

23   5420225, *6 (S.D.N.Y.  2014) ("Once the party seeking production of materials meets its burden of

24   showing relevance sufficient to justify discovery, the burden shifts to the movant to show why the

25   discovery should not be had.").

26          Dr. Berrier's 2012 opinion that the chemical structure of UR-144 is not substantially similar

27   to the chemical structure of JWH-018 was clearly relevant to the Government's allegations in its

28   original complaints that Claimants' products contain the alleged analogue UR-144.  The relevance

1    of Dr. Berrier's opinion is less apparent now that the Government alleges that the Claimants'

2    products contain XLR-11.  There is no evidence that Dr. Berrier specifically evaluated whether the

3    chemical structure of XLR-11 is substantially similar to JWH-018.  The Claimants' response

4    suggests that he did not.

5         The Court, however, is dubious of the Government's apparent assertion that XLR-11 is

6    substantially different from UR-144, but that both XLR-11 and UR-144 are substantially similar to

7    JWH-018.  In *United States v. Fedida*, 942 F.Supp.2d 1270, 1277 (M.D. Fla. 2013), the

8    Government argued that the chemical structure of UR-144 and XLR-11 are substantially similar to

9    JWH-018.  The court summarized the Government's position as follows:

10             As described by the Government's  expert, each of these substances
               has an indole core, which consists of a benzene ring fused to a
11             nitrogen-containing pyrrole ring. (Boos Decl. ¶¶ 8, 17.)  Each
               substance also has two substitutions to the indole core. The first
12             substitution takes place at the nitrogen in the indole core, which is
               also referred to as the "1–position." In all three substances, the
13             substitution at the 1–position is a 5–carbon pentyl chain.  The second
               substitution is located at a carbon atom in the indole core which is
14             located two positions away counterclockwise from the nitrogen. This
               is referred to as the "3–position."
15
               UR–144, XLR–11, and JWH–18 differ primarily with regard to the
16             functional group that occupies the 3–position of the indole core. The
               3–position substituent in JWH–18 is a naphthyl moiety, which is a
17             fused pair of benzene rings, attached to the indole core by a carbonyl
               group. The 3–position substituents in UR–144 and XLR–11,
18             however, are tetramethylcyclopropyl moieties, which consist (in part)
               of three carbon atoms that are linked together in a triangular ring, that
19             are also attached to the indole core by a carbonyl group. Thus,
               UR–144, XLR–11 (except as noted elsewhere), and JWH–18 share
20             the following chemical structure:

21             [Illustration and description of illustration omitted]

22             The Government argues that the replacement of the naphthyl moiety
               in JWH–18 with the tetramethylcyclopropyl moiety present in
23             UR–144 and XLR–11 is of minor significance. (*See id.* ¶¶ 14, 23.) As
               such, the Government and its experts conclude that the chemical
24             structures of UR–144 and XLR–11 are substantially similar to the
               chemical structure of JWH–18. (*Id.* ¶¶ 24–26.)
25
         *Fedida*, 942 F.Supp.2d at 1278-79.
26
         Other courts, in reliance on the government's representations, also treat UR-144 and XLR-
27
28    11 as the same chemical substance for purposes of determining whether they are analogues to

                                          7

1  JWH-018.  *United States v. Makkar*, 2014 WL 1385298, *1 (N.D.Okla 2014) and *United States v.*

2  *Bays*, 2014 WL 3764876. *1, *4 (N.D.Tex. 2014).

3       The Government's substitution of XLR-11 as the alleged analogue in this case does not

4  necessarily render Dr. Berrier's 2012 opinion on UR-144 irrelevant.  If the differences in the

5  chemical structures of UR-144 and XLR-11 from that of JWH-018 are substantially the same, then

6  Dr. Berrier's opinion regarding the differences between UR-144 and JWH-018 may also be

7  relevant to the comparison between XLR-11 and JWH-018.  Given the broad construction of

8  relevancy for purposes of discovery, this would be a proper subject for inquiry at Dr. Berrier's

9  depositon.  The Government has not eliminated the relevance of Dr. Berrier's opinion by

10  substituting XLR-11 as the alleged controlled substance analogue in this case.

11       In contrast to Dr. Berrier who has apparently not testified in any judicial proceeding

12  regarding the lack of similarity between UR-144 and JWH-018, Dr. Boos has testified as an expert

13  witness for the Government in other cases, including *Fedida*, that the chemical structures of UR-

14  144 and/or XLR-11 are substantially similar to JWH-018.  The Government, however, has not

15  designated Dr. Boos as its expert witness in this case.  Instead, it has designated Dr. Van Linn, who

16  works under Dr. Boos's supervision, as its expert witness.  The Claimants still want to depose Dr.

17  Boos, however, in the belief that they can use his testimony to impeach Dr. Van Linn's opinions,

18  and defeat the Government's claim that XLR-11 is substantially similar to JWH-018.   The Court

19  finds that this is an insufficient basis to justify the taking of Dr. Boos's deposition.

20       Rule 26(b)(2)(C)(i) provides that on motion, or on its own, the court must limit the

21  frequency or extent of discovery otherwise allowed if it determines that the discovery is

22  unreasonably cumulative or duplicative, or can be obtained from some other source that is more

23  convenient, less burdensome or less expensive.  Claimants can examine Dr. Van Linn at deposition

24  or trial about Dr. Boos's relevant testimony in *Fedida* or other cases for purposes of attacking the

25  foundation for Dr. Van Linn's opinion that XLR-11 and JWH-018 are substantially similar.  *See*

26  Fed.R.Evid. 703 and 705, and Advisory Committee Notes.  Dr. Boos's testimony in other cases

27  may also be admissible against the Government under Fed.R.Evid. 801(d)(2)(C) or (D) and could

28  be cited by the Claimants' own expert in support of his or her presumed opinion that XLR-11 and

1    JWH-018 are not substantially similar.  Because the Government has not designated Dr. Boos as its

2    expert witness in this case, the Court finds that neither Dr. Boos nor the Government should be

3    burdened by requiring him to testify at a deposition in this case–especially in view of the fact that

4    Claimants have access to Dr. Boos's testimony given in other cases.  To hold otherwise, would

5    essentially allow the Claimants to dictate who the Government calls as its expert witness.

6        **2.    Whether 5 C.F.R. § 2635.805 Bars Dr. Berrier from Being Subpoenaed to Testify.**

7        The Government argues that Dr. Boos[4] and Dr. Berrier are precluded by regulation from

8    testifying as expert witnesses for the Claimants unless the Government grants them permission to

9    testify.  5 C.F.R. § 2635.805(a) states as follows:

10
11           An employee shall not serve, other than on behalf of the United
             States, as an expert witness, with or without compensation, in any
12           proceeding before a court or agency of the United States in which the
             United States is a party or has a direct and substantial interest, unless
             the employee's participation is authorized by the agency under
13           paragraph (c) of this section.

14        Subparagraph (c) states that permission may be granted if the designated agency ethics

15    official determines that the employee's service as an expert witness is in the interest of the

16    government or that the testimony does not relate to the employee's official duties.

17        The Court agrees with the Government that this regulation cannot be sidestepped by

18    characterizing Dr. Berrier as a fact witness rather than an expert witness.  The "fact" about which

19    Claimants intend to question Dr. Berrier is his 2012 expert opinion that the chemical structure of

20    UR-144 is not substantially similar to JWH-018.  Federal district courts, however, have rejected the

21    assertion that 5 C.F.R. § 2635.805 bars federal employees from being subpoenaed to provide

22    otherwise admissible expert opinion testimony in a federal civil action.  In *Dean v. Veterans*

23    *Admin. Regional Office*, 151 F.R.D. 83 (N.D. Ohio 1993), plaintiff brought an action against the

24    Veterans Administration ("VA") for discrimination under the Rehabilitation Act of 1973.  The

25    plaintiff subpoenaed the VA neurologist who examined him to provide testimony about his

26    _____

27        [4] As stated in the preceding section, the Court will not authorize the taking of Dr. Boos's
     deposition.  Therefore, although the arguments regarding the regulation also apply to Dr. Boos, the
28    remaining discussion is  limited to whether the deposition of Dr. Berrier should be precluded.

disability.  In rejecting the VA's argument that 5 C.F.R. § 2635.805 barred the neurologist from

testifying for the plaintiff, the court stated that "[r]equiring this Court to quash the subpoena based

on 5 C.F.R. § 2635.805 is tantamount to permitting the ethics regulation to restrict this Court's

broad discovery powers under Rules 30 and 34 of the Federal Rules of Civil Procedure.  There is

no authority for that type of restriction."  151 F.R.D. at 86.  The court further stated:

> The regulation involved here was promulgated under the Ethics in
> Government Act, whose stated purpose was "to prevent corruption
> and other official misconduct before it occurs, as well as penalizing it
> once it is uncovered."  S.Rep. No. 170, 95th Cong., 2d Sess. 31
> (1978), *reprinted* in 1978 U.S.C.C.A.N. 4216, 4247.  The VA has
> presented no evidence that the regulation was meant as anything
> other than a guide for employee action and an attempt to eliminate
> misconduct.  There is no authority for enforcing such a provision in
> the midst of unrelated civil litigation.  This court declines to allow an
> employee ethics regulation to curb its own discovery power under
> Rules 30 and 34.

*Id.* at 86-87.

Relying on *Dean,* the court in *Young v. United States*, 181 F.R.D. 344 (W.D. Tex. 1997)

stated that the regulation did not bar the plaintiff from deposing a treating physician employed by

the Navy in plaintiff's medical malpractice action against the government.  In *Massey v. United

States*, 2013 WL 960273 (S.D.Miss. 2013), the court also held that regulation did not bar the

plaintiff from subpoenaing a treating physician employed by the government to testify regarding

her examination, treatment and diagnosis of plaintiff.  *Young* and *Massey* noted that a treating

physician who testifies about his examination, treatment and diagnosis of a patient is generally not

considered an expert for the purpose of litigation.  *Young,* 181 F.R.D. at 346;  *Massey*, 2013 WL

960273, at 3.  *Massey* notes, however, that "Federal Rule of Civil Procedure 45(c) adequately

protects government employees from being called to testify as expert witnesses against their will."

*Id.* at *2.

In this case, Dr. Berrier rendered an opinion that the chemical structure of UR-144 and

JWH-018 are not substantially similar.  His opinion was rendered during the course of the DEA's

evaluation and determination that UR-144 is a controlled substance analogue.  Dr. Berrier's opinion

may properly be characterized as a dissenting view from the agency's ultimate determination that

UR-144 and XLR-11 are controlled substance analogues.  Whether Dr. Berrier's opinion is

protected by the deliberative process privilege is discussed hereinafter.  The courts, however, have declined to recognize 5 C.F.R. § 2635.805(a) as creating a separate privilege that allows the Government to prevent employees who have relevant expert information from being called as witnesses in a civil action in federal court.  The Court therefore concludes that 5 C.F.R. § 2635.805(a) does not preclude the Claimants from deposing Dr. Berrier about his 2012 opinion.

### 3.   <u>Whether Dr. Berrier's Deposition is Precluded by Rule 26(b)(4)(D).</u>

Rule 26(b)(4)(D) states that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Subpart (D)(ii) of the rule provides that such discovery may be allowed "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."[5]

As stated by the court in *Precision of New Hampshire, Inc. v. TRI Component Products Corp.*, 2103 WL 2444047, *2 (N.D.Iowa 2013):

> The purpose of Rule 26(b)(4)(D) is to promote fairness by precluding a party from using an opponent's expert to build his own case. *Brown v. Ringstad*, 142 F.R.D. 461, 465 (S.D.Iowa 1992).  The rule aims to prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation.  *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995).  The rule also protects an "important interest in allowing counsel to obtain the expert advice they need ... without fear that every consultation with an expert may yield grist for the adversary's mill."  *Id.*  Thus, the Rules set a high barrier for discovery of a non-testifying expert's opinions, with the only exceptions being medical examinations under Federal Rule of Civil Procedure 35(b) or a showing of "exceptional circumstances."  *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416, 419 (N.D.Ill. 2011).

Some courts have interpreted the rule as being inapplicable to a party's employees.  This interpretation is based in part on the notion that an expert should be impartial and "is expected to owe his allegiance to his calling and not to the party employing him."  *Virginia Electric & Pow.*

---

[5] The Government did not assert in its motion that Rule 26(b)(4)(D) bars Claimants from deposing Dr. Berrier or Dr. Boos.  Because the Government did not raise Rule 26(b)(4)(D), the Court arguably should not have raised it on its own volition.

*Co. v. Sun Shipbuilding & D.D. Co.*, 68 F.R.D. 397, 406 (E.D.Va. 1975).  The court in *Virginia Electric & Pow. Co.* stated that although an employee may be an expert, "if his contact with the case is not in his capacity as an impartial observer, but is instead as one going about his duties as a loyal employee, then he 'should be treated as an ordinary witness.'"  *Id.*  Other courts have recognized, however, that in actual experience retained experts often are not impartial.  Instead, litigants and their counsel retain and disclose experts whom they expect to testify in their favor. *See Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 385-86 (N.D.Ill. 2012).  These courts have therefore held that Rule 26(b)(4)(D) can apply to a party's employee if the employee is "specially employed," i.e. assigned to provide expertise on a matter in anticipation of litigation or to the prepare for trial.

In *In re Shell Oli Refinery*, 132 F.R.D. 437 (E.D.La. 1990), for example, the defendant assigned two of its employees to investigate the cause of an explosion at its refinery.  The employees were given their assignments after lawsuits had already been filed.  The plaintiffs argued that the two employees "should be treated as ordinary witnesses under Fed.R.Civ.Pro. 26(b)(1) because they are in-house experts who would have performed the tests in question as part of their regular duties regardless of litigation."  132 F.R.D. at 441.  The evidence showed, however, that the defendant's legal department and outside counsel specifically requested the employees to help the investigation team defend the lawsuits.  Shell's outside counsel also requested that the employees prepare preliminary reports of their investigation and study of the explosion.  The employees sent their reports only to the attorney.  Although the employees were not assigned to work exclusively on the litigation, they remained available to assist outside counsel on an as-needed basis.

In holding that the plaintiffs were not entitled to discover the employee-experts' opinions, the *Shell* court held that a party's employee may be a non-testifying expert protected from discovery under Rule 26(b)(4)(D).[6]  The court stated that:

> To rule otherwise would encourage economic waste by requiring an employer to hire independent experts to obtain the protection of Rule 26(b)(4).  Protection of an in-house expert's opinion's (sic) supports

_____

[6] At the time of the *Shell* decision, the provision was contained in Rule 26(b)(4)(B).

12

> improved public safety and other social benefits of self-analysis. That the work of an in-house expert is used not only to defend a lawsuit but also to improve a company's operations or product design does not remove him from the parameters of Rule 26(b)(4)(B). *See Hermsdorfer v. American Motors Corp.*, 96 F.R.D. 13, 15 (W.D.N.Y. 1982).
>
> Not all in-house experts fall within the parameters of the retained or specially employed language of Rule 26(b)(4)(B). The Advisory Committee Notes exclude from the scope of Rule 26(b)(4)(B) "an expert who is simply a general employee of the party not specially employed on the case." Those in-house experts who are not retained or specially employed should be treated as ordinary witnesses under Rule 26(b)(1), and if their work was in anticipation of litigation or preparation for trial, then discovery must be analyzed under the work product doctrine, Rule 26(b)(3).

*In re Shell*, 132 F.R.D. at 441-442.

The *Shell* court further stated that whether an employee-expert was retained or specially employed in anticipation of litigation must be decided on a case-by-case basis. The court found under the factual circumstances of that case that the two employees were clearly "specially employed" in anticipation of litigation and therefore were within the scope of the rule. *Id.* at 442.

The Ninth Circuit applies the "because of standard" in determining whether a document was created or information was obtained in anticipation of litigation. *In re Grand Jury Subpoena*, 357 F.3d 900, 907-908 (9th Cir. 2004). The court stated that "[t]he 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" *Id.* at 908.

An argument could perhaps be made that Dr. Berrier's opinion was obtained in anticipation of litigation because it was directed at determining whether UR-144 is a controlled substance analogue under 21 U.S.C. §§ 802(32)(A) and 813, which, if so determined, could be anticipated to result in criminal prosecutions or civil forfeiture actions. The Government, however, does not make this argument in its supplemental brief. *See United States' Memorandum (#111)*. The Government instead appears to argue that its employee-experts are not subject to discovery unless it designates them as expert witnesses for trial. The Government further states:

> In this case, neither Dr. Boos nor Dr. Berrier: 1) has any knowledge of the specific facts of this case; 2) has done no scientific assessment or evaluation as relate to the facts of this case; 3) has prepared no written report as relates to the facts of this case; and 4) has not consulted with Government lawyers regarding the facts of this case. In short, neither Dr. Boos nor Dr. Berrier has a scientific, legal or factual connection to this case, and neither will testify on behalf of the Government. . . .

*United States' Memorandum (#111), pg. 2*

The Court recognizes that the Government does not intend to call Dr. Berrier as an expert witness at trial which would make him subject to deposition under Rule 26(b)(4)(A).  The foregoing statement, however, also appears to disavow an assertion that Dr. Berrier's 2012 opinion was obtained in anticipation of litigation.  As far as privilege is concerned, the Government relies on the deliberative process privilege and 5 C.F.R. § 2635.805(a), and not on either Rule 26(b)(4)(D) or the work-product doctrine.  The Court therefore concludes on this record that neither Rule 26(b)(4)(D) nor the attorney work-product doctrine bars the Claimants from deposing Dr. Berrier with respect to his 2012 opinion.

**4.** **Whether Dr. Berrier's Opinion is Protected by the Deliberative Process Privilege.**

The Government argues that Dr. Berrier's 2012 opinion that the chemical structure of UR-144 is not substantially similar to JWH-018 is protected from disclosure by the deliberative process privilege.  The deliberative process privilege is "predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fish bowl."  *Alexander v. F.B.I.*, 192 F.R.D. 50, 55 (D.D.C. 2000), quoting *Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990).  The purpose of the privilege is threefold:  (1) it protects candid discussion within an agency; (2) it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy; and (3) it protects the integrity of an agency's decision.  *Id.*, citing *Judicial Watch v. Clinton*, 880 F.Supp. 1, 12, (D.D.C. 1995), *aff'd*, 76 F.3d 1232 (D.C.Cir. 1996).  *See also Assembly of State of Cal. v. U.S. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) and *Carter v. U.S. Dept. of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002).

. . .

14

1       To qualify for protection under the privilege, "a document must be *both* (1) 'predecisional'

2   or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be

3   related to process by which policies are formulated.'" *National Wildlife Federation v. U.S. Forest*

4   *Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988), quoting *Jordan v. United States Department of Justice*,

5   591 F.2d 753, 774 (D.C. Cir. 1978).  The court stated that "[t]hese twin requirements recognize that

6   the underlying purpose of this privilege is to 'protect[] the consultive functions of government by

7   maintaining the confidentiality of advisory opinions, recommendations, and deliberations

8   comprising part of a process by which government decisions and policies are formulated.'" *Id.,*

9   quoting *Jordan,* at 772.

10      In determining whether the privilege applies, the court "should focus on whether the

11  document in question is a part of the *deliberative process*."  *National Wildlife Federation*, 861 F.2d

12  at 1118.  "Hence, even if the content of a document is factual, if the disclosure of the document

13  would expose 'the decisionmaking process itself' to public scrutiny by revealing the agency's

14  evaluation and analysis of the multitudinous facts,' the document would nonetheless be exempt

15  from disclosure.  (citation omitted).  In other words, the document is considered to be part of the

16  'deliberative process' as long as it is 'actually . . . related to the process by which policies are

17  formulated.'"  *Id.*, citing *Jordan*, 591 F.2d at 774.  The court further noted that "the deliberative

18  process privilege has been held to cover all 'recommendations, draft documents, proposals,

19  suggestions and other subjective documents which reflect the personal opinions of the writer rather

20  than the policy of the agency,' as well as documents which would 'inaccurately reflect or

21  prematurely disclose the views of the agency.'"  *Id.* 861 F.2d at 1118-19.

22      There is no dispute that Dr. Berrier's opinion was both predecisional and deliberative.  Dr.

23  Berrier rendered his opinion prior to the DEA making a final determination that UR-144 is a

24  controlled substance analogue.  According to the chronology provided by Claimants, his opinion

25  also preceded the DEA's determination that XLR-11 is a controlled substance analogue.  Dr.

26  Berrier's review reflects his personal opinion, or that of his section within the DEA, that UR-144 is

27  not substantially similar to JWH-018.  This information is clearly within the scope of the privilege.

28  *See Appleton v. Food and Drug Admin.*, 451 F.Supp.2d 129, 143 (D.D.C. 2006) (exchanges of

1   thoughts, ideas and documents concerning certain drugs and the FDA's position for drug approvals

2   were covered by the deliberative process privilege);  *Miller v. U.S. Dept. of Justice*, 562 F.Supp.2d

3   82, 113 (D.D.C. 2008) (discussions among FBI officials and other law enforcement and

4   prosecutorial officials regarding the caliber of evidence possessed against the plaintiff and others,

5   the proper jurisdiction and venues in which to bring possible legal actions against plaintiff and

6   others, the type and nature of charges that could be brought, and the possible repercussions of such

7   actions, were covered by the deliberative process privilege).

8          The Claimants argue, however, that the Government has waived the privilege by voluntarily

9   disclosing the emails and Dr. Berrier's opinion regarding UR-144 as *Brady* material in other

10  actions.  Claimants cite *General Elec. Co. v. U.S. E.P.A.*, 18 F.Supp.2d 138, 140-141 (D.Mass.

11  1998) ("the privilege is waived under certain circumstances if the documents have been disclosed

12  to a third party that is not an agency"); *Shell Oil Co. v. I.R.S.*, 772 F.Supp.202 (D.Del. 1991)

13  (deliberative process privilege waived where an authorized disclosure is made to a non-federal

14  party); and *Chilivis v. Securities & Exchange Commission*, 673 F.2d 1205, 1212 (11th Cir. 1982)

15  ("Waiver can occur when communications are disclosed to private individuals or nonfederal

16  agencies.").

17         In *In Re McKesson Govern. Entities Average Wholesale*, 264 F.R.D. 595, 599-600

18  (N.D.Cal. 2009), the CDHCS, the state agency responsible for overseeing and operating

19  California's medicaid program, produced documents allegedly protected by the deliberative process

20  privilege in another case pursuant to a protective order.  In holding that the CDHCS waived the

21  privilege with respect to the produced documents, the court stated that CDHCS was not a party in

22  the other case and that it had voluntarily produced the documents in that case "without taking

23  reasonable precautions to avoid disclosure of privileged information."  *Id.* at 600.  In *Spears v.

24  First American eAppraiseIT*, 2014 WL 6783737, *3 (D.D.C. 2014), however, the court held that

25  the agency did not waive its privileges by producing documents to a Senate subcommittee in

26  response to a subpoena.  The court cited *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1373

27  (D.C.Cir. 1984) for the proposition that documents produced pursuant to a subpoena are not

28  voluntarily disclosed.

16

In *Assembly of State of Cal. v. U.S. Dept. of Commerce*, 968 F.2d at 922-923, n. 5, the Ninth Circuit held that certain census documents were not protected from disclosure under the deliberative process privilege because the Department of Commerce had already revealed most of its decisional process and the disclosure of the additional documents requested by the California Assembly would not reveal anything about the agency's deliberative process that had not already been disclosed.  The court was careful to note that when considering the effect of substantial disclosure by an agency, the court does not base its decision on waiver.  Rather, the court considers the prior disclosures only to determine whether the disclosure of additional information would expose the decision making process any more than it had already been disclosed.  This is consistent with the statement in *In Re Sealed Case*, 121 F.3d 729, 741 (D.C.Cir. 1997) that release of a document only waives the deliberative process privilege for the document or information specifically released, and not for related materials.  *See also Spears v. First American eAppraiselIT*, 2014 WL 6783737, at *3; and *Santullo v. City of Woburn*, 2008 WL 2778819, *2 (D.Mass. 2008).

In this case, the Claimants represent that they obtained the documents relating to Dr. Berrier's opinion from *Brady* disclosures made by the Government in other cases.  The Government does not dispute this representation.  It argues, instead, that the documents were contained in "a series of **internal** email correspondence between DEA chemists." *Government's Reply (#91), pg. 3.*  While this appears to be true, it does not respond to the Claimants' assertion that the deliberative process privilege was waived as to these materials when the Government disclosed them to non-governmental parties in other cases.  Nor does the Government argue that the disclosures were involuntary or were somehow restricted so as not to waive the privilege with respect to use of the documents in other cases.  The Court therefore concludes that the Government has waived the deliberative process privilege with respect to Dr. Berrier's April 2012 opinion that the chemical structure of UR-144 is not substantially similar to JWH-018.

## CONCLUSION

Based on the foregoing, the Government has established good cause to quash the subpoena served on Dr. Terrence Boos and to enter a protective order barring his deposition.  The Government has not shown good cause, however, to quash the subpoena served on Dr. Arthur

17

1  Berrier or to bar the taking of his deposition.  The Claimants may depose Dr. Berrier with respect to

2  his April 2012 opinion that the chemical structure of UR-144 is not substantially similar to JWH-

3  018.

4          Accordingly,

5          **IT IS HEREBY ORDERED** that United States' Motion to Quash Subpoenas and Vacate

6  Scheduled Depositions, Docket No. 75 in Case No. 2:13-cv-100-JCM-GWF, and Docket No. 67 in

7  Case No. 2:13-cv-947-JCM-GWF, are **granted**, in part, and **denied**, in part, in accordance with the

8  foregoing provisions of this order.

9          DATED this 10th day of July, 2015.

10

11                                          _____

12                                          GEORGE FOLEY, JR.
                                            United States Magistrate Judge