**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

$1,002,327.00 in UNITED STATES CURRENCY seized from Fidelity Investment Account No. xxxxx9730;

$46,173.56 in UNITED STATES CURRENCY seized from Bank of America Account No. xxxxxxx3971;

$39,451.60 in UNITED STATES CURRENCY seized from Gulf Coast Community Bank Account No. xxxxxx4690;

$296,746.66 in UNITED STATES CURRENCY seized from Gulf Coast Community Bank Account No. xxxxxx5034;

$177,844.68 in UNITED STATES CURRENCY seized from Gulf Coast Community Bank Account No. xxxxxx4740;

2012 Ford F-250 truck, VIN: 1FT7W2BT1CEC44330; and

2011 Chevrolet 3500 Express Van, VIN: 1GB3G3CG9B1113885.

Defendants.

Case No.: 2:13-cv-00100-JCM-GWF

**Consolidated Case:**
Case No.: 2:13-cv-00947-JCM-GWF

**ORDER**

**Motion to Compel Discovery (#99)**
**Motion to Compel Discovery (#90)**

. . .

. . .

. . .

This matter is before the Court on the United States of America's (hereinafter "Government") Motion to Compel Discovery (Docket No. 99 in Case No. 2:13-cv-100-JCM-GWF, and Docket No. 90 in Case No. 2:13-cv-947-JCM-GWF) filed June 3, 2015[1]. The Claimants filed their Response (#110) on June 22, 2015, and the Government filed its Reply (#114/100) on July 2, 2015. The Court conducted a hearing in this matter on July 14, 2015. At the conclusion of the hearing the Court requested that the Government file a supplement to its motion describing the financial or asset information pertaining to the Claimants and their businesses that it has already obtained through investigation or otherwise. The Government filed its Supplemental Memorandum (#118) on August 10, 2015. The Claimants filed their Supplement (#103) regarding the same matter on August 10, 2015.

**BACKGROUND**

The Government seeks the forfeiture of United States currency totaling $1,562,543.50 and two motor vehicles which it alleges are proceeds, or assets purchased with proceeds, from the unlawful distribution of controlled substance analogues in violation of 21 U.S.C. §§ 813 and 841. *Amended Complaint (#72)*. More particularly, the Government alleges that Claimants and their associates sold "spice" products containing the chemical substance 1-5(5-Fluoropenty1)-3-(2,2,3,3-tetramethylcyclopropoyl)indole, commonly known as XLR-11, which is an analogue of JWH-018, a Schedule I controlled substance. *Amended Complaint (#72)*, ¶¶ 24- 28.

In order to prevail in this civil forfeiture action, the Government must prove the same elements that it would be required to prove in a criminal prosecution for distribution or conspiracy to distribute controlled substance analogues. Pursuant to the definition of "controlled substance analogue" in 21 U.S.C. § 802(32)(A), the Government must prove (i) that the chemical structure of the substance sold by the Claimants was substantially similar to the chemical structure of a Schedule I or II controlled substance; (ii) that the substance sold by Claimants had a stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially similar to or

[1] The Government also filed its Motion to Compel Discovery in Case No. 2:13-cv-947-APG-GWF. Again, documents should be only filed in the primary case number: 2:13-cv-00100-JCM-GWF.

greater than the stimulant, depressant or hallucinogenic effect on the central nervous system of a Schedule I or II controlled substance; or (iii) that the Claimants represented or intended that the substance have a stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant or hallucinogenic effect on the central nervous system of a Schedule I or II controlled substance. The Government must also prove that Claimants intended that the substance be consumed by human beings. 21 U.S.C. § 803(32)(C)(iv).

The majority of federal courts have adopted a conjunctive reading of 21 U.S.C. § 802(32)(A) "[which] requires two things: (1) the substance in question must have a chemical structure substantially similar to a controlled substance (criterion one) *and* (2) it must *either* have a substantially similar effect on the central nervous system (criterion two) *or* be purported or intended to have such an effect (criterion three)." *United States v. Turcotte*, 405 F.3d 515, 521 (7th Cir. 2005); *United States v. Approximately $50,205 in United States Currency*, 2013 WL 3729573, *4 (E.D.Wis. 2013). *Turcotte* also held that the government must prove that the defendant knew that the substance at issue has a chemical structure substantially similar to that of a controlled substance, and he must either know that it has similar psychological effects or intend that it have such effects. *Turcotte* stated that "if the scienter requirement is met with respect to the second part of the analogue definition (knowledge or representation of similar physiological effects), the jury is permitted–but not required–to infer that the defendant also had knowledge of relevant chemical similarities." *Id.* 405 F.3d at 527.[2] The Fourth Circuit has held that the government is not required to prove that the defendant knew the substance was a controlled substance analogue. *United States v. McFadden*, 753 F.3d 432, 443-44 (4th Cir. 2014). The district court in *United States v. Gross*, 60 F.Supp.3d 1245, 1249 (S.D.Ala. 2014), which involved an alleged conspiracy to distribute XLR-11, notes that the Eighth and Second Circuits have also adopted a scienter requirement. *See United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013) and *United States v. Robinson*, 363 F.3d

[2] *United States v. Lane*, 2013 WL 3716601, *1 (D.Ariz. 2013) raises a question as to whether the "*Turcotte* inference" is scientifically sound.

118, 123 n.1 (2nd Cir. 2004). The court in *Gross* also applied the scienter requirement. The Claimants have previously asserted that *Turcotte's* scienter requirement applies in this case. For purposes of this discovery motion, the Court assumes that the scienter requirement applies and that the parties are entitled to obtain discovery relevant to that requirement.

In response to the instant motion to compel discovery and in previous arguments to the Court, Claimants have made clear that their defense in this case is that the chemical structure of XLR-11 is not substantially similar to the chemical structure of JWH-018. *Claimant's Response to Government's Motion to Compel (#110)*, pg. 3. Claimants also state that they "have repeatedly acknowledged in a variety of ways, including in their interrogatory responses, that the assets here at issue were 'the proceeds of the sale of a product containing XLR11 or were purchased with the proceeds of such sales.' (See Interrogatory Responses No.'s 17 and 10)." *Id.*

Claimants, however, have not abandoned their defense of lack of scienter if the Government proves that the chemical structure of XLR-11 and JWH-018 are substantially similar. To the contrary, Claimants allege that they believed the substances used in their products were not illegal or controlled substance analogues. In this regard, Claimants allege that in July and September 2012, Claimant Ritchie met with DEA Special Agent Claude Cosey, who toured Claimants' manufacturing facilities. During those meetings Claimant Ritchie told Agent Cosey that he was using "5FUR144" in his products, provided Agent Cosey with other details about his operations including how much it cost him to produce his product, and the price lists for the products.[3] Claimant Ritchie "told Agent Cosey that he believed what he was doing was legal but that if Agent Cosey told him it was illegal he would stop." *Claimants' Response (#110),* at pg. 3, citing Agent Cosey's testimony at pgs. 50-53, 33, 38. Claimants also assert that Agent Cosey told Mr. Ritchie

---

[3] According to Agent Cosey, Mr. Ritchie told him that it cost $2.50 to produce each packet of product. Agent Cosey testified that he saw price list for different products from $15 to $35 per packet. *See Docket No. 103-1, Agent Cosey Deposition*, pgs. 32-33. Agent Cosey also testified that during the meeting with Mr. Ritchie on July 26, 2012, he stated to Mr. Ritchie" "'You know that this is spice, and people smoke this.' And he said, 'Hey, I sell this as –' I think he said incense. He said, 'I sell it as incense, and whatever somebody does with it after they buy it, that's on them. I don't know, and I don't want to know (indicating).'" *Id.*, pg. 64. Agent Cosey testified that he took Mr. Ritchie's statement to mean that Mr. Ritchie knew exactly what people were doing with his product, but he wasn't going to admit it. *Id.*, pg. 66.

that he did not believe 5FUR144 "was illegal at that time." *Id.,* citing Agent Cosey's testimony at pg. 55. The Claimants have also reportedly claimed that the products were tested by an independent private lab to assure that they were in compliance with federal drug laws. The Government contends, however, that these lab tests were based on incomplete information regarding the ingredients in the products. *Amended Complaint (#72)*, ¶¶ 29, 32.

The Government alleges that Claimants Ritchie, Galecki and their corporate and individual conspirators marketed the "spice" products "as incense and aromatherapy when they were well aware of the psychotropic qualities of the substances that they sold." *Amended Complaint (#72)*, ¶ 18. The Government further alleges that "the manner in which Ritchie and his conspirators sold their products demonstrates that the products were being offered as controlled substances rather than innocuous household products . . . . For example, the product labeling and internet promotions restricted sale of the substances to customers who are 18 and older. There would be no need for an age restriction on the sale and/or use of the product if it was being offered as an incense or aromatherapy." ¶ 19. Although the products were labeled with the statement that they were not for human consumption, the Government alleges that this statement was misleading "since other factors, such as the presence of analogue controlled substance ingredients as well as the pricing of the products demonstrates that they were intended for sale and use as illicit recreational drugs." ¶ 20. The products were also "marketed in single-use packages which is more consistent with how illicit drugs are sold" than with how incense or other similar products are sold. *Id.*

The Government has served interrogatories and requests for production of documents on Claimants which seek information relating to Claimants' financial conditions and assets. Claimants have objected to the discovery requests on the grounds that they are irrelevant and unduly burdensome. The following discovery requests by the Government are in dispute:

**Interrogatory No. 1** asks for Claimants' personal identification information, i.e., full name, prior names, nicknames, date and place of birth and Social Security number. Claimants object to providing their Social Security numbers.

**Interrogatory No. 7** asks for the identification of each financial institution in which Claimants have maintained accounts since 2010.

**Interrogatory No. 18** asks Claimants to state where they have been employed since 2010 and to state their gross and taxable income for federal tax purposes for the years 2010 to 2014.

**Interrogatory No. 20** asks Claimants to state, for the period from January 1, 2010 to the present, whether they have made debits on, deposits into or withdrawals greater than $100.00 on any given occasion from any account on which they have signatory authority at any bank or other financial institution.

**Interrogatory No. 21** requests that if Claimants' responses to Interrogatory No. 20 are in the affirmative, that they identify the bank or financial institution, the name and account number of the account, the identity of all persons with signatory authority on the account, and the date that the account was opened and closed.

**Interrogatory No. 22** asks Claimants to state for the years 2010 through 2014 whether they filed federal, state, business and/or local tax returns. The interrogatory includes tax returns for businesses with which Claimants are associated.

**Interrogatory No. 23** asks Claimants to specify for the past three years any and all payments that they received that were not earned income and/or wage compensation that was for a lump or aggregate amount of $300.00 or greater, in any thirty day period. This would include, for example and without limitation, gifts, winnings, prizes, dividends, judgment awards or settlements, insurance disbursements, inheritances, trust accounts, profits from business investments, commercial or governmental refunds, retirement or pension income and governmental benefits such as social security benefits. The interrogatory asks Claimants to specify for each payment, when it was received, whether it was a one time payment or was made on a continuing or periodic basis, the purpose of the payment, and the identity of the person or entity who made the payment.

**Request No. 1** requests physical bank records for accounts identified in response to Interrogatories 7, 20 and 21.

**Request No. 2** requests federal tax returns filed by the Claimants for the years 2010 through 2014.

**Request No. 3** requests any documents that support responses to any of the enumerated interrogatories.

**Request No. 4** requests Claimants to provide authorizations for release of their tax returns.

**Request No. 5** requests Claimants to provide authorizations for release of their employment information.

**Request No. 6** requests Claimants to provide authorizations for release of information from financial institutions.

**Request No. 13** requests titles, deeds and liens for real property owned by Claimants.

**Request No. 14** requests any and all business records associated with ZIW, LLC and Psychedelic Shack, the entities through which Claimants manufactured and distributed the subject products.

In support of their motion to compel responses to these discovery requests, the Government argues that "Claimants' wealth, both legitimate and otherwise is the *raison d' etre* for this lawsuit[.]" *Motion to Compel (#99), pg. 2.* It also asserts "that as a matter of basic Rule 26 relevance the jury is entitled to know where, how much and under what circumstances the Claimants derived and *moved* their wealth." *Id.* Alternatively, the Government states that "even if the Claimants acknowledge the source of their income in a way that suits their purposes, how are the money laundering charges contained in the Government's amended complaint to be resolved? To prove money laundering, the Government must establish BOTH that the funds were proceeds of a specified unlawful activity AND that the funds were moved within the financial system. . . . The only way that the Government can prove movement of the funds is through acquisition and evaluation of the financial accounts where the Claimants variously parked and moved their money." *Id.* During the hearing on this motion the Government made the additional argument that the requested documents and information are relevant to proving that Claimants knew their "spice" products were controlled substance analogues, i.e., that the amount of wealth Claimants were able to accumulate from the distribution of their products is circumstantial evidence of their knowledge that the substances were illegal.

As stated above, the Claimants concede "that the assets here at issue were 'the proceeds of the sale of a product containing XLR11 or were purchased with the proceeds of such sales.'" *Response (#110),* pg. 3. In response to the Government's argument that it needs the requested

documents and information to establish that the funds were obtained through money laundering in violation of 18 U.S.C. § 1956 or § 1957, the Claimants state:

> The government has already subpoenaed voluminous records from banks, car dealerships and real estate brokers showing that the proceeds in question all went through bank accounts. See composite exhibit No. 2 reflecting samples of the voluminous financial records already in the government's possession reflecting that the proceeds here at issue went through bank accounts. Bank deposits and withdrawals are sufficient to support a money laundering count. See 18 U.S.C. 1957(a) and (d). Claimants have admitted in their answer and in their claims that the cash seizures came from bank accounts they own and in their interrogatory responses have admitted they represent the proceeds of sales of XLR 11.

*Response (#110)*, pg. 4.

Given their admissions, Claimants argue that the Government's discovery requests are unnecessary to prove its case and are therefore unduly burdensome. Claimants also argue that the real purpose of the Government's discovery requests is to locate and identify other accounts or assets that can be seized rather than to develop evidence in support of the forfeiture of the assets listed in the amended complaint. Claimants argue that requiring them to respond to these discovery requests will likely render them unable to defend this action because of the burden of responding and the threat that their other assets will be seized.

**DISCUSSION**

Parties may generally obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. "The key phrase in [the prior version of Rule 26(b)(1)]– 'relevant to the subject matter involved in the pending action'–has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 96 S.Ct. 2380, 2389 (1978), citing *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947). Although the scope of discovery was somewhat narrowed by the 2000 Amendments to Rule 26(b), the amendments did not dramatically alter the scope of discovery. *U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 431 (D.Nev. 2006). Most courts have held that Rule 26 still contemplates liberal discovery

and that relevancy under Rule 26 remains broad. *Id.* The amendments, however, mandated that the courts apply greater scrutiny to discovery requests and limit or restrict discovery in accordance with the factors set forth in Rule 26(b)(2). *Id.*, citing *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D.Ind. May 22, 2002).

*Krause v. Nevada Mutual Ins. Co.*, 2014 WL 496939, *3 (D.Nev. 2014) sets forth the framework for deciding motions to compel discovery:

> A motion to compel may be brought where responses to Rule 34 requests for production are insufficient. *See* Fed.R.Civ.P. 37(a)(3)(B)(iv). The party seeking to compel discovery has the initial burden of establishing that a request satisfies the relevancy requirements of Rule 26(b)(1). *Hinkley v. Vail,* 2013 WL 2444214 (W.D.Wa.), order *rescinded in part* by, 2013 WL 3852984. It is not necessary for a moving party to make a *prima facie* case to justify discovery. When the discovery sought appears relevant on its face, "[t]he party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 309 (D.Kan.1996) (citation omitted). "When the relevancy is not apparent, it is the burden of the party seeking discovery to show the relevancy of the request." *Id* (citations omitted); *see also Dolfo v. Bank of America, N.A.,* 2013 WL 1316705 (S.D.Cal.) ("Once the moving party establishes that the information is [ relevant], the burden shifts to the opposing party to specify how the discovery request is irrelevant, overly broad, burdensome, or oppressive.") (citations omitted).

Rule 26(b)(2)(C) states that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that: . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Contrary to the Government's overbroad assertions in its motion, the issue in this case is not the Claimants' wealth or assets in general. Rather, the issue is whether the United States currency and motor vehicles listed in the amended complaint were derived from the Claimants' alleged distribution of controlled substance analogues or the laundering of money obtained from such activities. If the Claimants disputed that the currency and motor vehicles were derived from the

sale or distribution of the alleged unlawful products, then broad discovery into their financial records and assets would be both relevant and necessary.  The Claimants, however, concede that the currency and the vehicles were derived from the sale of the alleged controlled substance analogues.  These admissions therefore make it unnecessary for the Government to obtain financial documents and information in order to tie the seized currency and vehicles to the Claimants' alleged sales of controlled substance analogues.  It is therefore appropriate to limit discovery relating to Claimants' financial conditions in accordance with Rule 26(b)(2)(C).

Given the Claimants' concessions, the cases cited by the Government in its opposition to the Claimants' previously withdrawn motion for protective order, which the Government also relies on in support of its instant motion to compel, are distinguishable. *See United States Opposition to Claimants' Motion for Protective Order (#77)*, Case No. 2:13-cv-00947-JCM-GWF, pgs. 4-5. Most of the cases cited by the Government involved claims for fraudulent conveyances of assets, common law fraud, or RICO in which broad discovery into the defendants' financial condition and assets was warranted. *See Wells Fargo Bank, N.A. v. Iny*, 2014 WL 1796216 (D.Nev. 2014) (fraudulent conveyances of property, cash and securities); *Paws Up Ranch, LLC v. Green*, 2013 WL 6184940 (D.Nev. 2014) (fraud, racketeering, conversion and unjust enrichment); *State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.*, 375 F.Supp.2d 141, 156-157 (E.D.N.Y. 2005) (common law fraud and RICO); and *Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D.Pa. 1993) (fraudulent conveyance of assets). *Grosbeck v. Panther Transportation, Inc.*, 251 F.R.D. 162 (M.D.Pa. 2008) involved a claim for punitive damages in which discovery to determine the defendant's net worth was appropriate. *Clayton Brokerage Co., Inc. v. Clement*, 87 F.R.D. 569 (D. Md. 1980) provides no information regarding the claims on which the discovery was predicated.

The circumstances of this case do not justify a full blown exploration into the Claimants' financial conditions and a detailed identification of their personal and real property assets.  Some discovery relating to Claimants' financial conditions is relevant and reasonable, however, because of the requirement that the Government prove that Claimants knew that the substances were controlled substance analogues.  Absent direct statements by Claimants indicating their knowledge that the substances at issue were controlled substance analogues, the Government must prove

scienter through circumstantial evidence. Such evidence may include facts such as those alleged in the amended complaint: (1) that the products were sold in individual sized packets indicating their use for human consumption, (2) that the labels and promotional materials restricted sale of the substances to customers age18 years and older, and (3) that the products were sold at prices substantially higher than the cost of production. The nature of the business premises from which the products were sold may also be relevant to this determination. The income or profit that Claimants derived from the sale of these products is also a relevant fact in establishing Claimants' knowledge.

Interrogatory No. 18 asks the Claimants to identify their occupations or employments from 2010 to the present and to state their gross and taxable income for federal income tax purposes for the years 2010 to 2014. Requests for Production Nos. 2 and 4 request Claimants' federal tax returns for those years. For the reason stated in the preceding paragraph, information and documents relating to Claimants' income during the time period they were allegedly involved in the sale of controlled substance analogues is relevant and discoverable. The Claimants' federal or state income tax returns are a source from which such information may be obtained.

Although not privileged, courts recognize that taxpayers have a privacy interest in their tax returns. *Sweeney v. The UNLV Research Foundation*, 2010 WL 1756875, *4 (D.Nev. 2010), citing *Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009) and *Hollinger International, Inc. v. Hollinger, Inc.*, 2005 WL 3177880, *4 (N.D.Ill. 2005). Courts also accord privacy protection to tax returns because the tax system depends on accurate reporting of income and deductions by taxpayers who might be less than candid on their returns if they were made available to opposing parties in the ordinary course of litigation. *Id.* Tax returns may be discovered, however, where the taxpayer's income or financial condition is in issue and where adequate, verifiable information regarding income is not otherwise available to the requesting party. *Combe v. Cinemark USA, Inc.*, 2009 WL 2578853, 82 (D.Utah 2009). If the requesting party shows the relevance of the producing party's tax returns, then the burden shifts to the producing party to show that other sources exist from which defendants may readily obtain the information. *Continental Coal, Inc. v. Cunningham*, 2007 WL 4241848, *4 (D.Kan. 2007).

At this point, Claimants have not identified any other documents that provide adequate and verifiable information regarding their income during the subject years. The Court will therefore order Claimants to answer Interrogatory No. 18 and state their gross and taxable income for federal income tax purposes for the years 2010 to 2014. Claimants are also required to answer Interrogatory No. 22 which asks whether they filed federal, state or local income tax returns for themselves or their businesses during the years 2010 to 2014. In response to Request for Production No. 2, Claimants shall produce those federal and state income tax forms and schedules that show their gross and taxable income for the years 2010 through 2014. This order also applies to the federal and state income returns of ZencenseIncenseWorks, LLC, ZIW, LLC, ZenBio, LLC, BioZen and/or Psycheldelic Shack, Inc., to the extent such records are in the possession, custody *or control* of the Claimants. A party is deemed to have control over documents if he or she has a legal right to obtain them on demand. *McCurdy v. Johnson*, 2013 WL 4506432, *3 (D.Nev. 2013); *Pham v. Wal-Mart Stores, Inc.*, 2012 WL 3730565, *2 (D.Nev. 2012); and *Estate of Young Through Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991). The Court will not require Claimants to execute authorizations for the Internal Revenue Service to release their tax returns to the Government's attorneys so long as Claimants produce relevant copies of their tax returns within 30 days of the date of this order, unless such time is extended by stipulation or further court order.

The Court also concludes that the part of Request for Production No. 14 which requests the daily/monthly and/or annual sales documents of ZIW, LLC and Psychedelic Shack, Inc. for each line of products containing XLR-11 is relevant and that documents responsive thereto should be produced. Claimants have not shown that the production these documents would be unduly burdensome.

So long as Claimants provide reliable information and documents relating to their income and the income or profits of their businesses derived from sale of products containing XLR-11, then it is not necessary to require Claimants to respond to the other interrogatories and requests for production. The Government's purpose in seeking detailed information regarding Claimants' financial accounts, and personal and real property may be to identify additional assets that are subject to seizure. This does not justify barring the discovery, if it is otherwise reasonably related

and necessary to the preparation of the Government's case. Because such information and documents are not reasonably required with respect to the claims and defenses in this case, however, the Court will not compel their production. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery Docket No. 99 in Case No. 2:13-cv-100-JCM-GWF, and Docket No. 90 in Case No. 2:13-cv-947-JCM-GWF are **granted**, in part, and **denied**, in part as follows:

1. Claimants shall answer Interrogatory Nos. 18 and 22 and shall produce documents in response to Requests for Production Nos. 2 and 14 in accordance with the foregoing provisions of this order.

2. The Government's motion to compel answers and responses to the other interrogatories and requests for production is denied.

DATED this 31st day of August, 2015.

George Foley Jr.

GEORGE FOLEY, JR.
United States Magistrate Judge